DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
RYAN J. PADDEN (S.B. #204515)
rpadden@omm.com
DAVID J. SEPANIK (S.B. #221527)
dsepanik@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Plaintiff
APPLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

APPLE INC., a California corporation,

Plaintiff,

v.

AMAZON.COM, INC., a Delaware corporation, and AMAZON DIGITAL SERVICES, INC., a Delaware corporation,

Defendants.

Case No. CV 11-01327 PJH

**APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**Fed. R. Civ. P. 65(a); Civ. L.R. 65-1**

Date: June 22, 2011
Time: 9:00 A.M.
Courtroom: 3, 3rd Floor
Judge: Hon. Phyllis J. Hamilton

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Apple Is Likely To Succeed On Its Trademark Infringement Claim ..... 1

1. The APP STORE Mark Is Protectable ..... 1

a. APP STORE Is Suggestive ..... 1

b. APP STORE Is Not Generic ..... 2

i. Dictionary Definitions Do Not Demonstrate Genericness ..... 3

ii. "Noun + Store" Marks Are Not Per Se Generic ..... 4

iii. Apple Is Not Estopped ..... 5

iv. APP STORE Is Not Generic To The Consuming Public ..... 5

2. Consumers Are Likely To Be Confused ..... 7

a. Amazon's Knowing Use Establishes Confusion ..... 7

b. The Internet Trinity Applies And Supports Confusion ..... 8

i. Internet Trinity Factor 1: Virtually Identical Marks ..... 8

ii. Internet Trinity Factor 2: The Services Are Related ..... 9

iii. Internet Trinity Factor 3: Same Marketing Channels ..... 9

iv. The Other Sleekcraft Factors Demonstrate Confusion ..... 10

B. Apple Is Likely To Succeed On The Merits Of Its Dilution Claim ..... 11

1. The APP STORE Mark Is Famous ..... 11

2. Amazon's Use Of APPSTORE Will Dilute Apple's Mark ..... 12

a. Amazon's Use Blurs The Distinctiveness Of Apple's Mark ..... 12

b. Amazon's Use Tarnishes Apple's Mark ..... 13

3. The Fair Use Defense Does Not Apply ..... 13

C. Apple Will Suffer Irreparable Harm If An Injunction Is Not Ordered ..... 14

D. The Balance Of Hardships Strongly Favors Apple ..... 14

E. The Public Interest Favors An Injunction ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**


*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ..... 9, 15

*Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171 (D. Nev. 2003) ..... 15

*CG Roxanne LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ..... 5

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988) ..... 15

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169 (7th Cir. 1996) ..... 3

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002) ..... 8

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143 (9th Cir. 1999) ..... 3, 6

*Formica Corp. v. Newnan Corp.*, 149 U.S.P.Q. 585 (T.T.A.B. 1966), *rev'd on other grounds*, 396 F.2d 486 (C.C.P.A. 1968) ..... 6

*Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999) ..... 4

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ..... 15

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987 (Fed. Cir. 1986) ..... 2

*Hotmail Corp. v. Van$ Money Pie Inc.*, 47 U.S.P.Q. 2d 1020 (N.D. Cal. 1998) ..... 11

*In re Am. Online, Inc.*, 77 U.S.P.Q.2d 1618 (T.T.A.B. 2006) ..... 3

*In re Computer Store, Inc.*, 211 U.S.P.Q. 72 (T.T.A.B. 1981) ..... 4

*In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341 (Fed. Cir. 2001) ..... 6

*Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107 (9th Cir. 1999) ..... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Microsoft Corp. v. Lindows.com, Inc.*,
64 U.S.P.Q. 2d 1397 (W.D. Wash. 2002) .... 14

*Money Store v. HarrisCorp Fin., Inc.*,
689 F.2d 666 (7th Cir. 1982) .... 1, 2, 4

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) .... 8, 10

*Official Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir. 1993) .... 8

*Packman v. Chi. Tribune Co.*,
267 F.3d 628 (7th Cir. 2001) .... 7

*S.S. Kresge Co. v. United Factory Outlet, Inc.*,
598 F.2d 694 (1st Cir. 1979) .... 4

*Vertos Med., Inc. v. Globus Med., Inc.*,
No. 09-1411 PJH, 2009 WL 3740709 (N.D. Cal. Nov. 6, 2009) .... 10, 14

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
610 F.3d 1088 (9th Cir. 2010) .... 12, 13

**OTHER AUTHORITIES**

*New Oxford American Dictionary* .... 2, 3

*Oxford English Dictionary* .... 2, 3

*PC Magazine* .... 4

# I. INTRODUCTION

Amazon's opposition is more remarkable for what it fails to say than for what it says. Amid all the expected claims of genericness and overreaching by Apple, there is not a single fact regarding Amazon's intent. Amazon submits two declarations from its employees—including one involved in branding Amazon's service—but neither of those employees addresses why Amazon chose APPSTORE. The implication is clear: Amazon chose that mark in order to trade on the fame and goodwill established by Apple. Amazon's intent weighs heavily in favor of Apple's motion.

Amazon's opposition also suffers from a fatal case of myopia: the opposition focuses at a "micro" level on individual uses of Apple's mark that Amazon claims are generic. But Amazon fails to focus on, let alone provide any evidence of, the relevant "macro" question: how does the relevant consuming public perceive Apple's mark? Only Apple has provided such evidence, and that evidence establishes consumer association between APP STORE and Apple.

The Court should grant the requested preliminary injunction.

# II. ARGUMENT

## A. Apple Is Likely To Succeed On Its Trademark Infringement Claim

### 1. The APP STORE Mark Is Protectable

#### a. APP STORE Is Suggestive

Amazon fails to rebut Apple's claim that the APP STORE mark is protectable as a suggestive mark. Mot. at 8-9. Under similar facts, the Seventh Circuit upheld a finding that THE MONEY STORE was suggestive: "'THE MONEY STORE' conveys the idea of a commercial establishment whose service involves supplying money. The term does not, however, necessarily convey the essence of the business, money lending." *Money Store v. HarrisCorp Fin., Inc.*, 689 F.2d 666, 674 (7th Cir. 1982). Amazon claims to distinguish *Money Store* on the grounds that the owner of THE MONEY STORE mark was not selling money, but "Apple *is* selling apps." Opp. at 9 n.3. Amazon's claim is factually mistaken. Apple does not "sell apps" in a "store." Instead, Apple acts as the agent for software developers who make their applications available for customers to license and download through the APP STORE service. Declaration of Thomas R.

La Perle ISO Apple's Reply ("La Perle Reply Dec.") ¶ 3. A "store" is commonly understood to refer to a physical location engaged in selling, contrary to the nature of the APP STORE service. The dictionaries cited in Amazon's Opposition reflect this understanding. The *Oxford English Dictionary* defines "store" as "a place where merchandise is kept for sale." *The New Oxford American Dictionary* defines "store" as "a retail establishment selling items to the public." Declaration of Sarah Givan ISO Amazon's Opposition, Dkt. 39 ("Givan Dec."), Ex. 3. Moreover, Amazon's trademark filings demonstrate this common understanding: Amazon recently registered 1-CLICK WEBSTORE. Declaration of David R. Eberhart ISO Apple's Reply ("Eberhart Reply Dec."), Ex. 1. Amazon's inclusion of "web" before "store" demonstrates that consumers need additional information to understand that a particular store is online—even in the presence of another term, "1-Click," that suggests online access.

Just as consumers were required to use "some imagination and perception . . . to identify the precise nature of the services offered" in *Money Store*, consumers must do the same with respect to the APP STORE service. 689 F.2d at 674. Consequently, APP STORE is a suggestive mark that is inherently distinctive and protectable.

**b. APP STORE Is Not Generic**

Amazon rests its entire infringement defense on the claim that APP STORE is generic. It dismisses Apple's assertion that APP STORE is suggestive, but makes no effort to rebut Apple's showing that the mark has acquired secondary meaning. Even if APP STORE is found descriptive rather than suggestive, Apple may protect it as a trademark because it has acquired distinctiveness. Mot. at 9-11. Instead, Amazon ignores this possibility, and focuses only on its claim that the mark is generic. Opp. at 13-14.

But Amazon's arguments regarding genericness are misdirected. Amazon focuses at a "micro" level—providing particular cherry-picked instances of allegedly generic use—and fails to address the relevant "macro" question: for a mark to be generic, it must be a common name that a *substantial majority of the relevant purchasing public understands primarily* as describing the genus of goods or services being sold. *See H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986). Amazon labels selected dictionary, website, and

publication references to APP STORE as "generic," rather than descriptive. Such random references do not show the primary understanding of a substantial majority of the relevant purchasing public. Only Apple's expert, Dr. Leonard, has provided the relevant "macro" evidence by conducting a broad use survey. And that survey shows that well over three-quarters of references to "app store" in publications and other sources were to Apple's service. Declaration of Robert A. Leonard ISO Apple's Motion, Dkt. 22 ("Leonard Dec."), ¶¶ 25-33.

i. **Dictionary Definitions Do Not Demonstrate Genericness**

Amazon first urges that separate dictionary definitions of "app" and "store" show genericness. Opp. at 3. But Apple is not claiming that these individual words are its trademarks; Apple claims only the combination. Neither Amazon nor Apple's expert were able to find any traditional dictionaries defining that combined term. *Id.*; Leonard Dec. ¶ 36. The absence of such a definition supports a finding of non-genericness. *See, e.g.*, *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996).

But even after dividing the mark, Amazon must consult two ***separate*** dictionaries to make its argument. Amazon relies on the *Oxford English Dictionary* to define "app" but uses *The New Oxford American Dictionary* to define "store." Opp. at 3. Amazon does so because, as noted above, the *Oxford English Dictionary* defines "store" in a way that demonstrates the suggestiveness of the APP STORE mark. The *OED*'s definition—"a place where merchandise is kept for sale"—is fundamentally at odds with the nature of the APP STORE service: it is not a physical place, merchandise is not kept there, and the software is not sold.

Amazon ultimately concedes, as it must, that the mark must be reviewed as a whole to determine if it is generic. Opp. at 10. Courts and the Trademark Trial and Appeal Board ("TTAB") have long recognized that compound terms can serve as valid trademarks even when the constituent terms have generic meanings. *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1148-49 (9th Cir. 1999) (rejecting claim that "a generic term plus a generic term equals a generic term"); *In re Am. Online, Inc.*, 77 U.S.P.Q.2d 1618, 1623 (T.T.A.B. 2006) (INSTANT MESSENGER not generic for real time text messaging service). But Amazon's citation of a nontraditional "dictionary"—*PC Magazine*'s online encyclopedia—for a

definition of the compound term does not advance Amazon's claim. *PC Magazine* specifically lists Apple's service as one of the "app store" definitions: "Apple's online store for downloading free and paid iPhone, iPod touch and iPad applications from third-party developers." Leonard Dec. ¶ 40, Ex. 10. And the definition of "***online*** app store" similarly references Apple's service: "A Web site for downloading free and paid applications to smartphones as well as Mac computers. Launched with the iPhone 3G in 2008, Apple's App Store popularized the concept of a single point of contact for downloading applications and updates." Givan Dec., Ex. 4. As Dr. Leonard's declaration establishes, *PC Magazine*'s definition of "app store" supports the proposition that APP STORE is not generic. Leonard Dec. ¶¶ 37-41.

ii. **"Noun + Store" Marks Are Not *Per Se* Generic**

Nothing supports Amazon's contention that a compound term that includes a noun and the term "store" must be generic. First, Amazon's three citations do not support that *per se* rule. *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999), addressed the suggestive mark OGGETTI and in dicta referred to "liquor store" as a generic term without establishing any *per se* rule. *S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 696 (1st Cir. 1979), addressed whether the term "mart," standing alone, was generic and did not consider the purported *per se* rule. Nor did the TTAB establish such a rule in *In re Computer Store, Inc.*, 211 U.S.P.Q. 72 (T.T.A.B. 1981). Rather, the TTAB concluded that THE COMPUTER STORE mark, which covered a physical retail location for the sale of computers, was merely descriptive and that the secondary meaning evidence was "not persuasive." *Id*. at 73.

Second, *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666 (7th Cir. 1982), directly contradicts the purported rule. If the *per se* rule existed, the court would have found THE MONEY STORE generic. It did not do so, and instead upheld the determination that the mark was suggestive and protectable. *Id*. at 674.

Finally, the Trademark Office has approved registrations for many marks that violate the purported *per se* rule, e.g.: THE CONTAINER STORE, WOOD STORE, AWARDSTORE, SWAG STORE, THE AUTO STORE, THE ENGAGEMENT RING STORE, THE GENERATOR STORE, THE PAPER STORE, THE SHADE STORE, DIGITAL MAP STORE.

Eberhart Reply Dec. ¶ 3, Ex. 2. And Amazon holds a registration that violates the supposed *per se* rule: 1-CLICK WEBSTORE. *Id*., Ex. 1. The purported *per se* rule does not exist.

iii. **Apple Is Not Estopped**

Amazon claims that "[a]n owner of a purported mark who itself uses that mark generically is estopped as a matter of law from asserting protectability." Opp. at 1. A quote in a conference call with the limited audience of securities analysts is not evidence of Apple's use of the APP STORE mark in marketing the service to the general public, or how the public perceives the mark. Amazon is wrong to assert that trademark law is so unforgiving that the fleeting misuse of a mark renders it forever generic. Nor does Amazon's cited authority—*CG Roxanne LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1029 (N.D. Cal. 2008)—support such a draconian rule. There, the court addressed whether the phrase BOTTLED AT THE SOURCE was generic. The trademark claimant printed the phrase on each of its bottles of water and used it in its advertising—not as a mark but to convey that the water was, in fact, bottled at the source. Although the court quoted Professor McCarthy's claim that "a kind of estoppel arises" in such a situation, the *CG Roxanne* court did not apply any estoppel. Instead, the court looked at multiple sources of evidence to assess whether the mark was generic, even though it was undisputed that the trademark claimant's generic use was substantial. *Id.* at 1026-30.

Notwithstanding the fact that the law does not support estoppel, Amazon's evidence regarding Apple's purported generic use is not compelling. Amazon presumably scoured the hundreds, if not thousands, of public statements made by Apple using the term "app store" during a three years period and found a single statement during a 2010 earnings call.[1] This isolated use of the term is a far cry from the use on packaging and in advertising considered in *CG Roxanne*.

iv. **APP STORE Is Not Generic To The Consuming Public**

Amazon does not deny that before Apple's introduction of its APP STORE service, other competitors, primarily operators of mobile telephone systems, provided downloadable software.

---

[1] Nor does the absence of Apple's identification of APP STORE as a trademark in certain 2009 press releases or its isolated references to the service as an "online store" or "application store" provide any basis to conclude the mark is generic. Apple did not use the APP STORE mark itself generically in those instances, and Amazon does not contend otherwise.

None of those competitors referred to its service as an "app store." And although Salesforce.com once expressed an intent to use that term in commerce, it never commenced such use—Apple expressed its opposition based on the similarity to "Apple Store," and Salesforce.com abandoned its plans to use the term. La Perle Reply Dec. ¶ 5. Accordingly, this is not a situation where the mark was void *ab initio* because it existed as a generic term prior to its adoption as a trademark. Apple created and popularized the mark APP STORE to refer to its mobile software download service. And as a result of Apple's overwhelming investment in its mark and the APP STORE service, the predominant usage of the term APP STORE is as a proper noun to refer to Apple's online software marketplace. Leonard Dec. ¶ 23.

In response to Apple's evidence, Amazon cites to a handful of articles and blogs to argue that "'App Store' is commonly used by the general and trade press as the name for online retail stored featuring apps." Opp. at 4. However, Amazon has simply hunted for a few isolated instances of misuse, which as the TTAB has recognized, can and do occur for any mark. "[W]riters . . . either through ignorance, carelessness or indifference frequently use a trademark in a generic sense." *Formica Corp. v. Newnan Corp.*, 149 U.S.P.Q. 585, 586 (T.T.A.B. 1966), *rev'd on other grounds*, 396 F.2d 486 (C.C.P.A. 1968).

Amazon's limited selection of examples of misuse in articles and blogs simply cannot show that the consuming public understands the term "***primarily*** as describing the genus of goods or services being sold." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001) (emphasis added); *Filipino Yellow Pages*, 198 F.3d at 1147. In contrast, Apple has provided evidence of how the consuming public understands the APP STORE mark through Dr. Leonard's analysis of a vast number of examples of usage. Dr. Leonard concluded that the primary understanding of the term "app store" is as a proper noun to refer to Apple's online application marketplace. Leonard Dec. ¶ 23. And Dr. Leonard's survey of the LexisNexis database of United States news stories, The Corpus of Contemporary American English, and Google searches, revealed that the vast majority of references—86%, 88%, and 76% of the references in these sources, respectively—were to Apple's APP STORE service. *Id.* ¶¶ 25-33. Amazon fails to offer any evidence that assesses a similar breadth of public understanding.

Amazon also points to a handful of other entities that, like Amazon, have opted to attempt to capitalize on Apple's success by referring to their services as "app stores." But this does not demonstrate the primary understanding of the public. And to the extent Apple was aware of those entities, Apple has been working to convince them to cease their use of the mark. *See* Declaration of Thomas R. La Perle ISO Apple's Motion, Dkt. 21 (LaPerle Dec."), ¶¶ 12-14.

Nor does the notion that there are more than 2,100 active registered domain names containing "appstore" demonstrate the primary understanding of the consuming public. If anything, it shows that Apple has been comparatively diligent and successful in policing its mark: a similar search for active domain names containing "Kindle"—the mark for Amazon's device announced approximately four months before Apple's APP STORE service was announced—resulted in nearly 6,000 active registered domains. Eberhart Reply Dec., Ex. 3. Certainly Amazon does not contend that its KINDLE mark has been rendered generic due to such use.

**2. Consumers Are Likely To Be Confused**

**a. Amazon's Knowing Use Establishes Confusion**

Amazon deliberately commenced its use with knowledge of Apple's mark and in the face of Apple's objections. Mot. at 16-17. Amazon does not deny this. Amazon's intentional and willful disregard of Apple's rights is unambiguous and "[a]dopting a designation with knowledge of its trademark status permits a presumption of intent to deceive." *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). Amazon makes no attempt to distinguish this authority, instead citing a case that declined to find intent to deceive where there was direct evidence of good faith. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001) (employee's decision to use phrase without knowledge of mark was "evidence of good faith").

But Amazon provides no evidence of good faith. To the contrary: although Amazon submits the declaration of an Amazon employee—Aaron Rubenson—who was involved in the branding and marketing of Amazon's service, Mr. Rubenson is tellingly silent on why Amazon chose Apple's mark. Declaration of Aaron Rubenson ISO Amazon's Opposition, Dkt. 37 ("Rubenson Dec."), ¶ 7. Although Amazon's counsel argues that Amazon chose the mark because it was generic, that argument is unsupported by any evidence. Opp. at 18. Despite

having a witness who could address the question, Amazon never denies that it chose Apple's mark to capitalize on Apple's goodwill.

Amazon's deliberate decision to launch its APPSTORE service with knowledge of Apple's prior rights—and the absence of any evidence that Amazon had intentions other than to trade on Apple's success—warrants a presumption that consumers will be confused. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).

In light of this presumption, consumer confusion is established and the Court need not analyze the remaining *Sleekcraft* factors. Should the Court choose to do so, however, those factors demonstrate consumer confusion.

**b. The Internet Trinity Applies And Supports Confusion**

The Ninth Circuit's recent decision in *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011), endorsed its prior decisions that three *Sleekcraft* factors—the internet "trinity"—continue to take primacy over other factors for certain internet-related trademark cases. In particular, *Network Automation* endorses the continued use of the internet trinity in cases involving trademarks related to internet domain names. *Network Automation*, 638 F.3d at 1148-49. Amazon provides no explanation why the facts of this case are unlike internet domain name cases or why the internet trinity should not apply to the instant facts.

i. **Internet Trinity Factor 1: Virtually Identical Marks**

The marks are virtually identical, which supports a finding of confusion. Amazon argues that its use of the AMAZON house mark will dispel consumer confusion. But as Apple's Motion noted, Amazon is known as a reseller of others' products, which may lead consumers to conclude that Amazon has been authorized to offer software available through the APP STORE service. Mot. at 13-14. Amazon does not address this argument, instead claiming that Apple's authorities "involved a defendant blatantly misappropriating a plaintiff's well-known marks." Opp. at 18 n.5. But that is precisely what Amazon has done here. Amazon also urges that its use of

"Amazon Appstore for Android" mitigates any confusion. Opp. at 18. But Amazon never claims—whether in its brief or its supporting declarations—that it consistently uses the mark in this fashion. And as Apple's Motion demonstrates, Amazon does not do so. Mot. at 7.

ii. **Internet Trinity Factor 2: The Services Are Related**

Amazon and Apple both offer downloadable mobile software to consumers; in many cases, they offer the same software titles. Declaration of Matthew Fischer ISO Apple's Motion, Dkt. 23 ("Fischer Dec."), ¶ 25. Moreover, Amazon's reputation as a reseller increases the likelihood that consumers will believe Amazon offers the same software Apple offers. Mot. at 13-14. But Amazon argues that consumers of expensive mobile devices are sophisticated and know software offered by Amazon cannot operate on Apple's products (and vice versa). While that may be true for some consumers, it will not be true of all—particularly those consumers who are considering the availability of mobile software download services ***before*** acquiring a mobile device. Moreover, Apple specifically designed the APP STORE service so that it could be used by consumers who are not technologically savvy. Fischer Dec. ¶ 6. Amazon also seeks to attract consumers based on the claimed ease of use of its service. *Id.* ¶ 23, Ex. 10. There is no reason—let alone evidence— to believe that such consumers will be as sophisticated as Amazon claims.

Nor is Amazon engaged in "legitimate comparative and contextual advertising" as it claims. Opp. at 17. The risk of initial interest confusion is high where, as here, companies offer services that relate to the same general industry even if no sales are consummated. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056, 1062-63 (9th Cir. 1999).

iii. **Internet Trinity Factor 3: Same Marketing Channels**

Amazon does not dispute that the parties' marketing channels, namely the use of the internet, overlap. Rather, Amazon claims this factor is irrelevant because advertising on the internet has become commonplace by commercial retailers. Opp. at 19. Amazon misses the point. Amazon *only* markets the mobile software download service through the internet and, more specifically, through Amazon's own website. Because Apple has authorized Amazon to sell other Apple products on Amazon's site, Consumers are likely to be confused when they also see Amazon is offering a mobile download service using Apple's APP STORE mark.

iv. **The Other *Sleekcraft* Factors Demonstrate Confusion**

***Apple has shown the strength of its APP STORE mark.*** Amazon responds to Apple's evidence of the strength of its mark by repeating the claim that the mark is generic (as discussed above, it is not) and to misstate the law by claiming that "commercial strength should not be considered in deciding a preliminary injunction motion." Opp. at 17 (citing *Network Automation*). As even the language Amazon cites from *Network Automation* makes clear, a trademark owner ***need not*** produce evidence of commercial strength of its mark to obtain a preliminary injunction. But *Network Automation* does not hold that a trademark owner ***cannot*** present such evidence or that such evidence is irrelevant. *Network Automation*, 638 F.3d at 1150. Apple was not required to produce evidence of commercial strength, but Apple's evidence of hundreds of millions of dollars spent on print, television, and internet advertising for its mark—and the fact that there exists a substantial public association between the mark and Apple as the source of the service, as established by Dr. Leonard's declaration—demonstrates that this *Sleekcraft* factor strongly favors Apple. Fischer Dec. ¶¶ 9-10, 13-22; Leonard Dec. ¶¶ 23, 25-33.

***Apple need not show actual consumer confusion.*** Although evidence of actual confusion is not required to obtain an injunction, *Vertos Med., Inc. v. Globus Med., Inc.*, No. 09-1411 PJH, 2009 WL 3740709, at *7 (N.D. Cal. Nov. 6, 2009), Apple has submitted evidence from Amazon's website demonstrating actual confusion. Fischer Dec. ¶ 28 ("When I first saw it on the Amazon page I thought it had an affiliation with the Apple App Store. . . .").

***Consumers do not exercise significant care.*** As discussed above, there is no reason to believe Amazon's unsubstantiated claims that all smart phone owners are savvy and sophisticated. Amazon's argument also ignores an entire class of consumers who do not currently own an Android or Apple device, and are choosing between the two. For these consumers, a comparison of the number, quality, and interoperability of apps available between the Android smart phone and Apple's products is likely to be a significant factor in their purchasing decision. La Perle Reply Dec. ¶ 8, Ex. 3. Consumers, hearing that Amazon offers a service using Apple's APP STORE mark—even those who are aware Amazon's offering is for Android devices—are likely to believe they can obtain access to the software available through Apple's APP STORE on

an Android device, that the companies' mobile software download services are similar, and/or that Amazon's service is sponsored by Apple.

***Amazon's potential for expanded use of the mark is strong.*** Amazon claims, without evidence, that it cannot expand into the licensing of software for use on Apple's devices without Apple's permission. Opp. at 19. And Amazon makes no attempt to explain the statement of an Amazon spokeswoman that "it wouldn't surprise [her]" for Amazon's APPSTORE to expand beyond Android devices into other ecosystems, which would potentially include Apple's iOS-based devices. La Perle Dec. ¶ 19, Ex. 9. Here again, the Amazon declarants are tellingly silent.

In any event, other retailers are currently offering mobile software for use on Apple's devices ***without*** Apple's permission. La Perle Reply Dec. ¶ 9. These retailers do so by offering software that operates on "jailbroken" Apple devices. Amazon is currently offering software for use on Android devices that have been "rooted"—the Android equivalent of a "jailbroken" Apple device—and there is no reason to believe Amazon would not offer software for "jailbroken" Apple devices. Moreover, Amazon has recently demonstrated its intent to target Apple's customers by launching a new service that allows customers to download from Amazon software for MAC personal computers manufactured by Apple. *Id.* ¶ 12.

Whether analyzed on the basis of Amazon's intent to trade on Apple's goodwill, the internet troika, or the full set of *Sleekcraft* factors, consumer confusion is likely.

## B. Apple Is Likely To Succeed On The Merits Of Its Dilution Claim

Apple also will prevail on its dilution claim.

### 1. The APP STORE Mark Is Famous

Apple produced substantial evidence of fame: three years of use, hundreds of millions of dollars in advertising, exposure to the owners of more than 160 million Apple mobile devices worldwide, and use of the APP STORE service to download software applications more than 10 billion times. Mot. at 19. Courts have found fame based on significantly less evidence. *See, e.g.*, *Hotmail Corp. v. Van$ Money Pie Inc.*, 47 U.S.P.Q. 2d 1020, 1021, 1024 (N.D. Cal. 1998) (use in commerce for two years combined with $10 million marketing, distributing and advertising nationally and internationally).

Amazon produces no evidence in rebuttal. Instead, it repeats the claim that the mark is generic, which is addressed above. Amazon also urges that the lack of registration precludes a finding of fame. But the U.S. Patent and Trademark Office concluded that APP STORE was registrable, and only Microsoft Corporation's opposition has delayed that registration.

**2. Amazon's Use Of APPSTORE Will Dilute Apple's Mark**

Although either alone suffices, both blurring and tarnishment are likely.

**a. Amazon's Use Blurs The Distinctiveness Of Apple's Mark**

Amazon urges that no blurring can occur because both companies "are using 'app store' to refer to their respective stores that sell[2] apps." Opp. at 21. But as Apple noted in its Motion, Amazon is placing Apple's mark in a new and different context—a mobile software download service for Android devices—thereby weakening the mark's ability to bring to mind Apple's service. Mot. at 21. Amazon cannot simultaneously claim (1) in the context of confusion, that consumers know that the parties' services are different, but (2) in the context of dilution, that the parties' services are the same—i.e., "stores that sell apps." Dilution by blurring occurs when the danger exists that the public will associate one mark with two sources, precisely what is occurring here. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010).

The six factor test for blurring favors Apple. Amazon does not dispute that the first factor is met—the degree of similarity of the marks—rather, Amazon claims it is entitled to use "app store" because the term is generic. For the reasons already addressed, it is not. The mark is suggestive, or at a minimum descriptive with acquired distinctiveness, thus the second factor—the degree of distinctiveness of the mark—favors Apple. Third, "app store" was not a term in common use before Apple introduced its APP STORE service three years ago. While others, including Amazon, have infringed Apple's rights, Apple has actively policed and pursued such infringement with success. Fourth, Apple's mark is widely known among customers and non-customers as shown by the Leonard Declaration. Fifth, Apple has produced evidence that Amazon launched its service with knowledge of Apple's superior rights to the mark, and Amazon

[2] As discussed above, the APP STORE service does not sell mobile software applications.

has offered no evidence that it did not intend to trade on Apple's success. Apple's access to evidence of the sixth factor (actual association between the marks) is limited, but nonetheless Apple has submitted evidence that at least some consumers have drawn an association between the marks. Fischer Dec. ¶ 28, Ex. 12.

**b. Amazon's Use Tarnishes Apple's Mark**

Amazon mischaracterizes Apple's tarnishment claim. Apple has not asserted that the Android operating system is inferior. Opp. at 22. Rather, Apple has asserted that Amazon's service is inferior and will tarnish Apple's mark. Mot. at 21-23. Among other things, Amazon is making software available that bypasses security safeguards on Android, thereby increasing the potential harm of viruses and malware to customers' Android devices. The Paleja Declaration does not rebut this point. Mr. Paleja asserts that a user cannot bypass security restrictions unless the software application bypasses those restrictions. Declaration of Ameesh Paleja ISO Amazon's Opposition, Dkt. 38, ¶ 7. But this misses the point: malicious applications have greater ability to cause harm on "rooted" Android devices, and Amazon provides applications for such devices. And as Apple's Motion noted, even non-"rooted" Android-based devices have experienced significant security breaches. Mot. at 21-22. Last week, moreover, Google announced another 30 Android-based software applications were infected by malware. La Perle Reply Dec. ¶ 10. And Amazon recently changed the operation of its service in response to consumer complaints that it was too easy to accidentally download, and be charged for, software that the consumer did not desire. *Id.* ¶ 11, Ex. 5.

**3. The Fair Use Defense Does Not Apply**

Amazon's "fair use" defense claim is also entirely misplaced. First, it is premised on the argument that "app store" is a generic term. Opp. at 23. As discussed above, the term is not generic and there is no "common English definition" of "app store." If Amazon chose "app store" because Amazon believed it to be the generic, moreover, Mr. Rubenson should have so declared. He did not, and fair use does not immunize Amazon's intentional infringement.

Second, and equally important, unlike the *Visa International* hypothetical Amazon quotes at length, Amazon is using APPSTORE to refer to exactly the same product that Apple's

trademarked term APP STORE designates the source of—a mobile software download service. This is not a case where a word is being "taken out of circulation" for purposes other than those which its trademark status protects. Unlike "visa," "apple," or "camel," Apple's trademark in APP STORE protects its use as a source descriptor for a mobile software download service and Amazon's use of the term to describe an identical service violates that trademark, just as an infringer's use of Visa, Apple, or Camel to refer to credit services, computers, or cigarettes, respectively, would violate those trademarks.

### C. Apple Will Suffer Irreparable Harm If An Injunction Is Not Ordered

Irreparable harm is presumed once the plaintiff has established a likelihood of confusion. *Vertos Med.*, 2009 WL 3740709, at *11-12. Even absent the presumption, Amazon does not dispute that Apple devoted substantial efforts and resources to create a public association between the APP STORE mark and Apple. Amazon's continued use of that mark destroys that association and eviscerates Apple's overwhelming investment and goodwill. Apple will be unable to claim exclusive rights to the mark, crippling its enforcement efforts. The floodgates of further infringement will open, allowing all competitors to adopt the APP STORE mark as their own. If Apple is unable to maintain its exclusive use of the APP STORE mark, the mark will cease to be—the harm to Apple will be irreparable.

Amazon's response is to argue, incorrectly, that Apple chose to "name its product after a term commonly used in the trade." Opp. at 24 (citing *Microsoft Corp. v. Lindows.com, Inc.*, 64 U.S.P.Q. 2d 1397, 1410 (W.D. Wash. 2002)). But Amazon provides no evidence that "app store" was commonly used in the trade prior to Apple's introduction of its APP STORE service. And Apple has established the contrary proposition. La Perle Dec. ¶ 7; Leonard Dec. ¶¶ 23, 31.

### D. The Balance Of Hardships Strongly Favors Apple

In contrast, Amazon cannot claim any cognizable hardship. Amazon's Opposition asserts that an injunction "would force Amazon to shut down Amazon Appstore for Android while it arranges for a new designation," Opp. at 24, but Amazon's declarant does not so state. Rather, he states that "Amazon *might* be forced to shut down Amazon Appstore for Android for a period of time while it developed a new designation." Rubenson Dec. ¶ 8 (emphasis added).

In any event, Amazon repeatedly changes its website as part of its ongoing operations. It cannot contend credibly that a change to the name of its mobile software download service will be unduly disruptive. Moreover, Amazon's recent launch of its "Mac Software Downloads" service—which competes with Apple's APP STORE software and service for Mac computers—demonstrates that Amazon can brand its application download services without using the APP STORE mark. La Perle Reply Dec. ¶ 12. Further, Amazon may be required to make such changes in other jurisdictions given Apple's strong rights to the APP STORE mark in over 50 jurisdictions throughout the world.[3]

Amazon may not rely on hardship resulting from its deliberate decision to use Apple's mark. *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988). Because Apple is likely to succeed on the merits and to suffer irreparable injury absent an injunction, the Court need not further analyze the balance of hardships. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000).

### E. The Public Interest Favors An Injunction

Consumers are being misled to believe there is a relationship between Apple and Amazon with respect to mobile software download services. The public interest militates against allowing Amazon to continue to confuse consumers in this fashion. *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1205 (D. Nev. 2003) (citations omitted), *see also Brookfield*, 174 F.3d at 1066.

## III. CONCLUSION

For the foregoing reasons, the Court should preliminarily enjoin Amazon, and any related entity or person acting in concert therewith, from use of the APP STORE mark or confusingly similar marks, including but not limited to APPSTORE, until disposition of this action.

Dated: June 8, 2011

O'MELVENY & MYERS LLP

By /s/ David R. Eberhart
David R. Eberhart
Attorneys for Plaintiff APPLE INC.

[3] This action is only one part of Apple's global effort to enforce its rights to the APP STORE mark. The District Court in Hamburg, Germany has recently granted a preliminary injunction ordering Amazon to cease use of APP STORE in connection with Amazon's developer program in Germany. La Perle Reply Dec. ¶ 7, Ex. 2. (Amazon has not launched its service there.)