UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE, INC., | |
|     Plaintiff, | No. C 11-1327 PJH |
|     v. | **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |
| AMAZON.COM INC., et al., | |
|     Defendants. | |

The motion of plaintiff Apple, Inc. ("Apple") for a preliminary injunction came on for hearing before this court on June 22, 2011. Plaintiff appeared by its counsel David Eberhart, and defendants Amazon.com, Inc. and Amazon Digital Services, Inc. ("Amazon") appeared by their counsel Martin Glick, Sarah Givan, and Clara Shin. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

**BACKGROUND**

This is a trademark infringement case. Since July 2008, Apple has sold applications for its mobile devices through its App Store service. On July 17, 2008, Apple filed Application No. 77/525,433 to register the mark "App Store" with the U.S. Patent and Trademark Office ("PTO").

On January 5, 2010, the PTO filed a Notice of Publication, stating that the mark had been published in the Trademark Official Gazette, and that any party who believed it would be damaged by the registration of the mark could file a notice of opposition with the Trademark Trials and Appeals Board ("TTAB"). After requesting and receiving an

extension on the filing deadline, Microsoft Corporation ("Microsoft") filed an opposition to the registration (Opposition No. 91195582) asserting that the "App Store" mark cannot be registered because it is generic.

In September 2010, Amazon began soliciting software developers to participate in a future mobile software download service to be offered by Amazon. Apple allegedly became aware of this action in early January 2011, when Amazon launched the developer portal, in connection with the "Amazon Appstore Developer Program."

Apple subsequently demanded that Amazon cease its use of the "App Store" mark. Apple claims that Amazon provided no substantive response to those communications until after it had launched the Amazon Appstore for Android, which launch occurred on March 22, 2011 (after the filing of the original complaint in this action, but before the filing of the first amended complaint).

According to Apple, Amazon's Appstore service (available on the amazon.com website) offers nearly 4,000 mobile software applications, which can be downloaded onto Android mobile devices. Many of these applications are the same titles as some of the most popular applications available from Apple's App Store service.

In the first amended complaint, Apple asserts five causes of action – (1) trademark infringement, false designation of origin, and false description, under Lanham Act § 43(a), 15 U.S.C. § 1125(a); (2) dilution, under Lanham Act § 43(c), 15 U.S.C. § 1125(c); (3) trademark infringement, under common law; (4) dilution, under California Business & Professions Code § 14330 and common law; and (5) unfair competition, under California Business & Professions Code § 17200.

On January 10, 2011, Microsoft filed a motion for summary judgment in the TTAB opposition proceeding. The TTAB suspended the proceeding pending resolution of Microsoft's motion. Microsoft's motion was fully briefed as of March 29, 2011. On April 6, 2011, Apple submitted a request for oral argument on Microsoft's motion.

Apple now seeks an order preliminarily enjoining Amazon from using the "App Store" mark.

## DISCUSSION

A.  Legal Standard

A plaintiff seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008).

Alternatively, the plaintiff may demonstrate that serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 2011 WL 208360 at *7 (9th Cir., Jan. 25, 2011). A "serious question" is one on which the plaintiff has "a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S.Ct. at 376, 381.

B.  Apple's Motion

Apple contends that it is likely to prevail on the merits of its claims of infringement and dilution.

1.  Infringement claim

To prove trademark infringement, Apple must show ownership of a legally protectable mark and a likelihood of confusion arising from Amazon's use. Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007). Apple contends that it amply makes these showings.

Apple asserts that it meets the first prong of the infringement test because the "App Store" mark is legally protectable. Marks are normally classified as either generic, descriptive, suggestive, arbitrary, or fanciful. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Suggestive, arbitrary, and fanciful marks are inherently distinctive

1  and thereby automatically are entitled to federal trademark protection because "their
2  intrinsic nature serves to identify a particular source of a product."  Id.

3       A descriptive mark is not automatically entitled to trademark protection, but may
4  become protectable if the mark has acquired distinctiveness through secondary meaning.
5  Zobmondo Entmt., LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010).  Generic
6  marks are not eligible for trademark protection.  Id.

7       Apple contends that the "App Store" mark is suggestive, and is inherently distinctive.
8  A suggestive mark is one for which "a consumer must use imagination or any type of
9  multistage reasoning to understand the mark's significance."  That is, "the mark does not
10 describe the product's features, but suggests them."  Id. at 1114.  The primary criterion for
11 evaluating whether a mark is suggestive is whether it "requires a mental leap from the mark
12 to the product."  Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618
13 F.3d 1025, 1033 (9th Cir. 2010).

14      Apple argues that the "App Store" mark is suggestive because its meaning is not
15 inherently obvious, and claims that it has devoted substantial resources educating
16 consumers about the service.  Apple asserts further that even if the "App Store" mark can
17 be considered descriptive, rather than suggestive, it is protectable because it has acquired
18 secondary meaning.

19      In assessing secondary meaning, courts consider a variety of factors, including
20 (1) whether actual consumers of the service bearing the claimed trademark associate the
21 trademark with the producer; (2) the amount, nature, and geographical scope of advertising
22 under the claimed trademark; (3) the length and manner of its use; and (4) whether its use
23 has been exclusive.  See Japan Telecom, Inc. v. Japan Telecom Am., Inc., 287 F.3d 866,
24 873 (9th Cir. 2002).  Apple argues that under Sierra On-Line v. Phoenix Software, Inc., 739
25 F.2d 1415, 1422-23 (9th Cir. 1984), it need show only that there is a fair chance that it can
26 prove secondary meaning to obtain a preliminary injunction.

27      Here, Apple contends, the testimony of its expert Robert Leonard Ph.D., establishes
28 that customers associate the "App Store" mark with Apple's mobile software download

4

service. In his analysis, Dr. Leonard reviewed sources from LEXIS/NEXIS to determine the usage of "App Store" in news stories. Apple also argues that its massive advertising of its App Store and its use of the "App Store" mark support a finding of secondary meaning, as the advertising has "entrenched the mark in consumers' minds as being associated only with Apple." Finally, Apple asserts that it has been the substantially exclusive user of the "App Store" mark in connection with a mobile software download service since March 2008. Apple again cites to Dr. Leonard's declaration, to show that the term "app store" was not in general use in connection with the distribution of software prior to Apple's introduction of its App Store service.

Apple asserts further that the "App Store" mark is not generic. Generic marks are marks that "refe[r] to the genus of which the particular product is a species." Two Pesos, Inc., 505 U.S. at 768 (quotation omitted); see also Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999). A mark is generic if it "primarily denotes a product, not the product's producer." Anti-Monopoly, Inc. v. Gen. Mills Fun Group, 611 F.2d 296, 301 (9th Cir. 1979). Put another way, generic terms are common names that a substantial majority of the relevant public understand primarily as describing the genus of goods or services at issue. In re Dial-a-Mattress Operating Corp., 240 F.3d 1341, 1344 (Fed. Cir. 2001).

To determine whether a term is generic, the court looks to "whether consumers understand the word to refer only to a particular producer's goods or whether the customer understands the word to refer to the goods themselves." Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005). Courts refer to this as the "who-are-you/ what-are-you" test. Id. "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" Id. (quotation omitted).

Here, Apple argues, there is ample evidence that App Store is not primarily understood to mean the genus of services. Moreover, Apple asserts, its principal competitors have all found terms other than "App Store" to describe their services within the

5

relevant genus.

Nor, Apple argues, may Amazon "dissect" the term "App Store" into App + Store, examining each component of the term. Apple asserts that the mark must be examined as a whole to determine whether it is generic. In addition, Apple contends the fact that no traditional dictionary uses the term "app store" provides further proof that the term is not generic.

Apple contends that it also meets the second prong of the infringement test, because it can show that Amazon's use of the "App Store" mark is likely to confuse consumers. The question whether customers are likely to be confused about the source or sponsorship of products or services has been described as "[t]he core element of trademark infringement." Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1135 (9th Cir. 2006).

In the Ninth Circuit, an eight-factor test guides the assessment of whether a "likelihood of confusion" exists. Those factors are (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979); see also Reno Air, 452 F.3d at 1135-36 & n.9.

Apple argues that because the services at issue are marketed and delivered via the Internet, three of the Sleekcraft factors (the second, third, and fifth) take precedence over the others, under the analysis set forth in Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 942 (9th Cir. 2002). Here, Apple argues, the parties' services are related, as both companies offer downloadable mobile software to consumers – in many cases, the same software titles – and that unsophisticated consumers are likely to be confused regarding the availability and source of software.

Apple contends that the term "Amazon Appstore for Android" is virtually identical to Apple's "App Store" mark, and since Amazon is known as a re-seller of other companies'

products, consumers may erroneously conclude that Amazon has been authorized to offer software available through Apple's App Store service.

And, Apple argues, the two companies use the same marketing channel – the Internet – and because Apple has authorized Amazon to sell other Apple products on Amazon's website, consumers are likely to be confused when they also see that Amazon is offering a mobile download service using Apple's mark.

Apple contends that the remaining factors also support a finding of likelihood of confusion. With regard to the first factor – strength of the mark – Apple contends that its "App Store" mark is strong. Two relevant measurements of strength are "conceptual strength" and "commercial strength." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). Conceptual strength involves classification of a mark along the spectrum from generic to fanciful. Id. (citing Brookfield Comm'cns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1058 (9th Cir. 1999)). "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." Fortune Dynamic, 618 F.3d at 1032-33. Commercial strength is based on "actual marketplace recognition," and thus "advertising expenditures can transform a suggestive mark into a strong mark." Network Automation, 638 F.3d at 1149 (citing Brookfield, 174 F.3d at 1058).

Apple concedes that suggestive and descriptive marks are not conceptually the strongest, but asserts that the commercial strength of its mark is substantial, based on the hundreds of millions of dollars it has spent on print, television, and Internet advertising, and the fact that this advertising has created a significant public association between the mark and Apple as the source of the service.

With regard to the fourth factor – evidence of actual confusion – Apple asserts that since Amazon only recently started using the term "Appstore," it is not feasible to provide evidence of actual confusion, and the fact that there is no such evidence is not significant.

With regard to the sixth factor – the degree of care customers are likely to use in purchasing the goods – Apple argues that customers do not exercise significant care in

purchasing the actual software apps, as consumers are generally not likely to exercise significant care when navigating the Internet, and are also unlikely to exercise care when downloading free or inexpensive apps. Apple asserts further that because Amazon is attempting to attract customers on the basis of ease of service, its service may appeal to technologically less savvy consumers.

With regard to the seventh factor – Amazon's intent in selecting the mark – Apple asserts that Amazon's actual knowledge of the alleged infringement and its disregard of Apple's rights, as evidenced by Amazon's failure to respond to the cease-and-desist letters, and its continued use of the term "Appstore," can be construed as evidencing an intent to infringe.

With regard to the eighth factor – the likelihood of expansion into other markets – Apple argues that Amazon's potential for expanded use of the mark is strong, as shown by the fact that Amazon is already competing directly with Apple's mobile software download service. Apple concedes that Amazon's downloads will not work on Apple devices, but asserts that the two companies are still competing for customers who are considering what kind of software downloads might be available before they purchase the mobile device. Apple also argues that it is possible that Amazon might expand from offering downloads for the Android-type devices, into other "ecosystems," which could potentially include devices based on Apple's operating system.

In opposition, Amazon contends that Apple has failed to demonstrate that it is likely to succeed on the merits of the infringement claim. Amazon makes two main arguments – that the "App Store" mark is generic (and therefore not protectable), and that even if the mark is not generic, Apple cannot demonstrate any likelihood of confusion.

Amazon contends that the "App Store" mark is generic, because Apple's App Store is simply an online store where consumers can search for, choose, and download apps. In support of this argument, Amazon points to dictionary definitions of "app," and "store," and "app store;" Apple's generic use of "app" and "app store;" the generic use of "app store" by the media, industry press, and competitors; and the generic use of "app store" by

consumers. Amazon also asserts that no amount of secondary meaning can make a generic mark protectable. Amazon recognizes that there is no dispute that Apple was an early entrant into the app business, but argues that Apple cannot block competitors from using a generic name just because it was the first to popularize it.

In its second main argument, Amazon asserts that even if "app store" is not generic, Apple cannot demonstrate any likelihood of confusion, let alone the clear showing required for preliminary injunctive relief. "The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing [the mark]." Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). Amazon notes that only owners of Android devices will be able to purchase apps at Amazon's App Store for Android, and that no one who has an Apple device will be able to purchase an Apple app at the Amazon App Store. Thus, Amazon contends, customers at both stores understand that there is no overlap of goods.

In addition, Amazon argues that the Sleekcraft factors support a finding of no likelihood of confusion, and it also rejects Apple's argument that the court should place greater emphasis on the "trinity" of factors (similarity of marks, relatedness of goods, and similarity of marketing channels) that may in some cases be more relevant, because they are not necessarily more relevant here.

With regard to the first factor – the strength of the mark – Amazon argues that "App Store" is weak because it is generic. With regard to Apple's argument that its "App Store" mark is commercially strong, Amazon notes that the Ninth Circuit indicated in Network Automation that the evidence-intensive inquiry necessary to determine commercial strength is not appropriate at the preliminary injunction stage. See id., 638 F.3d at 1150.

With regard to the second factor – the relatedness of the goods – Amazon argues that it is highly unlikely that customers will mistakenly assume that there is an association between Apple's App Store and Amazon's Appstore for Android. Amazon contends that even were the products and services virtually interchangeable – which they are not, since Apple sells or makes available apps for its Apple devices, and Amazon sells or makes

9

available apps for the Android – this factor would need to be considered in conjunction with labeling and appearance of the advertisements and the degree of care exercised by consumers.

With regard to the third factor – the similarity of the marks – Amazon argues that they are not similar, because it is clear from the parties' respective websites that Amazon's apps are to be used on Android smartphones, while Apple's apps are to be used on Apple mobile devices. Thus, Amazon asserts, the prominent use of the well-known "housemarks" (Amazon/Android and Apple) significantly reduces or eliminates the likelihood that customers will be confused as to the source of the parties' products.

With regard to the fourth factor – evidence of actual confusion – Amazon argues that there is none, and that this factor has no effect on this case at this point.

With regard to the fifth factor – the marketing channels used – Amazon argues that it is irrelevant that the parties' products are offered via a common marketing channel – the Internet – because, as the Ninth Circuit explained in Network Automation, it would be a rare commercial retailer that did not advertise online today, and "the shared use of a ubiquitous marketing channel does no shed much light on the likelihood of customer confusion." Id. at 1150. Nevertheless, Amazon adds, a salient factor is that the apps compatible with Apple's devices can be purchased only at Apple's App Store.

With regard to the sixth factor – the degree of care customers are likely to exercise in purchasing the goods – Amazon contends that smartphone customers are aware that there is no overlap in goods. Amazon argues that the customers for these apps are not as technologically naive as Apple is attempting to argue – since they paid significant amounts of money for their devices, they are likely to be discriminating and sophisticated shoppers.

With regard to the seventh factor – Amazon's intent in selecting the mark – Amazon argues that there is no evidence that Amazon intended to mislead customers. Amazon asserts that the mere knowledge of Apple's mark is not sufficient to show bad faith, especially where a defendant, like Amazon, believes the mark to be generic and lacking in confusion.

With regard to the eighth factor – the likelihood of expansion into other markets – Amazon asserts that there is no likelihood of expansion, since Amazon cannot expand into sales of apps for Apple devices without Apple's permission. Thus, Amazon argues, this factor is irrelevant.

The court finds that Apple has not established likelihood of success as to the infringement claims. The court assumes without deciding that the "App Store" mark is protectable as a descriptive mark that has arguably acquired secondary meaning. The court does not agree with Amazon that the mark is purely generic, for the reasons argued by Apple, but also does not find that Apple has shown that the mark is suggestive, as there appears to be no need for a leap of imagination to understand what the term means.

However, the court finds that Apple has not established a likelihood of confusion. The Ninth Circuit has made clear that the eight Sleekcraft factors are not exclusive, and that some factors may be more significant than others, depending on the context. See, e.g., Network Automation, 638 F.3d at 1149.

Here, the first Sleekcraft factor – strength of the mark – favors Amazon, as Apple has not established that "App Store" is a strong mark. Apple concedes that the mark is not conceptually strong. Commercial strength, which generally is ascertained via an "evidence-intensive inquiry," is based on "actual marketplace recognition." Network Automation, 638 F.3d at 1149-50. While "advertising expenditures" may transform a suggestive mark into a strong mark, id. at 1149, Apple has not made a sufficient showing that the "App Store" mark is a suggestive mark.

The second factor – relatedness of the goods – slightly favors Apple, since both companies are offering downloads of software applications for mobile devices. However, the proximity of goods is measured by whether the products are complimentary, sold to the same class of purchasers, and similar in use and function. Id. at 1150. Thus, while the apps might be similar in use and function, the apps offered by Amazon can be used on Android devices only, not on Apple devices, which suggests that the class of purchasers is not the same in each instance.

11

The third factor – similarity of the marks – also favors Apple, since the marks are essentially identical in sight, sound, and meaning. See id. On the other hand, Amazon's website makes clear that the apps it offers are to be used with Android devices only.

The fourth factor – evidence of actual confusion – is neutral, since neither party has provided admissible evidence or considered this factor (which, in any event, is considered to be of diminished importance at the preliminary injunction stage. See id. at 1151.)

The fifth factor – marketing channel used – favors Amazon if one considers the marketing channel to be the Amazon.com website (as opposed to the Apple iTunes website), or possibly favors Apple if one considers the marketing channel to be the Internet (where almost anything today can be bought or sold).

The sixth factor – degree of care customers are likely to use in purchasing the goods – appears to favor neither side, since the parties' arguments are for the most part speculation concerning the relative "sophistication" of consumers and whether sophistication can be measured by (or is related to) the amount of money spent.

The seventh factor – Amazon's intent in selecting the mark – does not clearly favor Apple, since Amazon's position is that it believed the mark to be generic and therefore not protectable, and Apple has not shown otherwise.

The eighth factor – likelihood of expansion into other markets – is similarly unsupported by any evidence. It seems clear that Amazon would like to expand into other markets, by, for example, offering apps and other products for devices other than Android, but it seems equally clear that Amazon will not be able offer apps for Apple devices unless Apple licenses Amazon to do so.

Thus, two of the eight factors somewhat favor Apple, and three factors somewhat favor Amazon. The remaining three factors are neutral, or do not clearly favor either side. Accordingly, under this analysis, the court finds that Apple has not established that it is likely to prevail on the "confusion" element of its infringement claim.

2.   Dilution claim

Apple argues that it is also likely to prevail on the merits of its dilution claim. Under

the federal dilution statute, as amended in 2006, Apple is entitled to injunctive relief if it can establish (1) that its "App Store" mark is famous; (2) that Amazon is making commercial use of the mark; (3) that Amazon's use of the mark began after the "App Store" name became famous; and (4) that Amazon's use presents a likelihood of dilution of the distinctive value of the mark. PerfumeBay.com v. eBay, Inc., 506 F.3d 1165, 1180 (9th Cir. 2007); 15 U.S.C. § 1125(c); see also Nike, Inc. v. Nikepal Int'l, Inc., 2007 WL 2782030, at *5 (E.D. Cal., Sept. 18, 2007).

Apple asserts, first, that its mark is famous. "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Factors to be considered in determining whether a mark is famous include (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark is registered. Id.. Courts have found marks to be famous under the amended federal dilution statute due to national brand prominence, the degree of consumer recognition of the marks, significant advertising and brand promotion, and overall product sales. See Nike, 2007 WL 2782030, at *5-6; see also adidas America, Inc. v. Payless Shoesource, Inc., 529 F. Supp. 2d 1215, 1244-45 (D. Or. 2007).

Here, citing the testimony of its Director of the App Store service, Apple asserts that it has used the "App Store" mark for over three years, the mark has been exposed to the owners of more than 160 million Apple mobile devices worldwide, and consumers have downloaded software applications more than 10 billion times; that the mark has been the subject of extensive advertising across the United States with hundreds of millions of dollars spent on advertising; that the mark has garnered significant Web presence and unsolicited third-party publications discussing the brand; that the mark has a robust presence throughout the United States and abroad; and that the mark has been registered by Apple in more than 50 countries.

Apple contends further that Amazon is making commercial use of the mark, by designating its mobile download service by the name "Appstore," and by marketing and selling mobile software downloads through that service in the United States; and that Amazon's use of the "App Store" mark began long after Apple had made the mark famous and had spent millions of dollars promoting and advertising it, and had provided tens of millions of mobile devices with software applications.

Finally, Apple argues that Amazon's use of Appstore will dilute Apple's mark, either because the similarity between the two will blur the distinctiveness of Apple's mark, or because Amazon's use may tarnish Apple's mark.

Under the amended federal statute, dilution by blurring arises from association of the "similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Dilution occurs "when a mark previously associated with one product also becomes associated with a second." Visa Int'l Serv. Ass'n v. JSL Corp., 610 F.3d 1088, 1090 (9th Cir. 2010).

The statute identifies six factors relevant to the question of blurring – (1) similarity of the marks; (2) distinctiveness of the famous mark; (3) substantially exclusive use; (4) degree of recognition; (5) intent to create association; and (6) actual association between the marks. 15 U.S.C. § 1125(c)(2)(B). Apple contends that five of the factors weigh in its favor, and that the last factor is neutral.

Apple asserts that the marks are virtually identical, that its mark has acquired distinctiveness (as "app store" was not in common usage before it developed the App Store), that its use has been substantially exclusive, that its mark enjoys widespread recognition, and that Amazon is attempting to create association with Apple's mark. With regard to actual association, Apple contends that it would be premature to require Apple to make this showing, because Amazon's service was launched only three months ago.

Apple also contends that Amazon's use of the "App Store" mark will tarnish it. Dilution by tarnishment occurs when an "association arising from the similarity between a mark or trade name and a famous mark . . . harms the reputation of the famous mark." 15

14

1 U.S.C.A. § 1125(c)(2)(C).  Apple argues that it has expended substantial effort to offer a
2 service that is easy to use and provides high-quality, safe software that will preserve the
3 integrity and stability of its customers' mobile devices.

4        Based on the testimony of its Director of App Store Services, Apple claims that the
5 goodwill arising from its efforts is associated with its "App Store" mark, and that it
6 developed this reputation in part by screening software made available through the App
7 Store service, in order to ensure that the service does not include inappropriate content,
8 viruses, or malware.  Apple asserts that software compatible with the Android-based mobile
9 devices has been subjected to highly-publicized viruses and malicious code, which has
10 created device instability and data securing issues.  Thus, Apple argues, because Amazon
11 is enabling software to be downloaded through its Appstore service that bypasses security
12 safeguards, and can potentially damage its customers' devices, Amazon's use of the "App
13 Store" mark will tend to "whittle away" the value of Apple's mark.

14        In opposition, Amazon argues that Apple cannot demonstrate any likelihood of
15 dilution, let alone the clear showing required for preliminary relief.  Amazon makes three
16 arguments – that "App Store" is not a famous mark, that the statutory "blurring" factors
17 weigh in Amazon's favor, and that tarnishment is inapplicable in this case.

18        To meet the "famousness" element of protection under the dilution statutes, "a mark
19 [must] be truly prominent and renowned." Avery Dimension Corp. v. Sumpton, 189 F.3d
20 868, 875 (9th Cir. 1999).  This requires a showing greater than "distinctiveness" so as not
21 to "upset the balance in favor of over-protecting trademarks, at the expense of potential
22 non-infringing uses."  Id.  For example, Amazon notes, "Fruit of the Loom" is famous, but
23 "underwear" is not; and "Barnes & Noble" and "Amazon" are famous, but "bookstore" is not.
24 Similarly, Amazon asserts, "Apple," "iPod," "iPad," and "iTunes" are famous, but "AppStore"
25 is not.

26        Amazon contends that Apple does not presently own a registration, that it did not
27 coin the mark in question, and that even Apple has been known to refer to its "App Store"
28 as an "applications store" and an "electronic store."  Amazon notes in addition that Apple

15

has provided no survey or expert opinion regarding the actual recognition of its mark. Amazon asserts that "App Store" is not famous, as it is not a registered, arbitrary mark, but rather is an as-yet unregistered generic mark, and is a common term that many people and companies use.

Amazon contends that Apple has failed to show any likelihood of dilution by blurring or by tarnishment. Amazon argues that the first two "blurring" factors – similarity of the marks and distinctiveness of the marks – are irrelevant, since the "App Store" mark is generic.

With regard to the third factor – substantially exclusive use – Amazon argues that many retailers use "app store" to refer to their stores, and there are thousands of active registered domain names that use the term "app store."

With regard to the fourth factor – degree of recognition – Amazon contends that Apple has presented no survey or expert opinion to support its claim that the mark "App Store" has widespread recognition as being associated with Apple, and instead relies on a linguistic analysis of "app store."

With regard to the fifth factor – intent to create association – Amazon argues that Apple provides no support for its claim that Amazon intended to create an association with Apple when it started using "App Store."

With regard to the sixth factor – actual association between the marks – Amazon notes that Apple has conceded that it has no evidence of actual association between Apple's App Store and Amazon Appstore for Android, relying instead on two semi-anonymous posts from bloggers. However, Amazon argues, this type of "evidence" is inherently unreliable, as it is not authenticated and the source is not identified. See Sony Computer Entm't, Inc. v. Connectix Corp., 203 F.3d 596, 609 (9th Cir. 2000).

Amazon also asserts that there is no likelihood of dilution by tarnishment, because Apple has provided no evidence that Amazon has used the "App Store" mark "in a degrading or disparaging context." "Tarnishment generally arises when the plaintiff's trademark is linked to products of shoddy quality," which diminishes the value of the mark

because the public will associate the low quality with the plaintiff's unrelated goods. Id. (citation and quotation omitted). Amazon contends that Apple has provided no evidence that the "App Store" mark has been used in a degrading or disparaging context, or that there is anything inferior about Google's competing Android operating system.

In a final argument, Amazon argues that even if one assumes for the sake of argument that "App Store" is famous (which Amazon denies), Amazon's use of this term in "Amazon Appstore for Android" constitutes fair use and is not actionable. Amazon notes that under 15 U.S.C. § 1125(c)(3)(A), where a defendant uses a term for its common meaning, there can be no liability. Amazon asserts that it does not use "App Store" as a trademark, but simply to tell the customer whose service it is, what the service is (an app store), and what types of apps are offered (apps for Android).

The court finds that Apple has not established a likelihood of success on its dilution claim. First, Apple has not established that its "App Store" mark is famous, in the sense of being "prominent" and "renowned." The evidence does show that Apple has spent a great deal of money on advertising and publicity, and has sold/provided/furnished a large number of apps from its AppStore, and the evidence also reflects actual recognition of the "App Store" mark. However, there is also evidence that the term "app store" is used by other companies as a descriptive term for a place to obtain software applications for mobile devices.

With regard to the statutory "blurring" factors, the marks are similar, but "App Store" is more descriptive than it is distinctive. Apple did have substantially exclusive use of "App Store" when it launched its service a little over three years ago, but the term appears to have been used more widely by other companies as time has passed. The mark does appear to enjoy widespread recognition, but it is not clear from the evidence whether it is recognition as a trademark or recognition as a descriptive term. Moreover, there is no evidence that Amazon intended to create an association between its Android apps and Apple's apps, and there is no evidence of actual association.

With regard to tarnishment, there is no evidence to support a likelihood of success

on this part of the claim. Apple speculates that Amazon's App Store will allow inappropriate content, viruses, or malware to enter the market, but it is not clear how that will harm Apple's reputation, since Amazon does not offer apps for Apple devices.

## CONCLUSION

In accordance with the foregoing, the motion for preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Dated: July 6, 2011

PHYLLIS J. HAMILTON
United States District Judge