ARNOLD & PORTER LLP
Martin R. Glick (No. 40187)
marty.glick@aporter.com
Daniel B. Asimow (No. 165661)
daniel.asimow@aporter.com
Sarah J. Givan (No. 238301)
sarah.givan@aporter.com
Sean M. Callagy (No. 255230)
sean.callagy@aporter.com
Three Embarcadero Center, Suite 700
San Francisco, California 94111-4024
Telephone:   415.471.3100
Facsimile:   415.471.3400

Attorneys for Defendants
AMAZON.COM, INC., a Delaware corporation,
and AMAZON DIGITAL SERVICES, INC., a
Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff and<br>        Counter-Defendant,<br><br>vs.<br><br>AMAZON.COM, INC., a Delaware corporation, and AMAZON DIGITAL SERVICES, INC., a Delaware corporation,<br><br>        Defendants and<br>        Counter-Claimants. | Case No. 11-cv-01327 PJH<br><br>Action Filed:   March 18, 2011<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT ON APPLE'S CLAIM FOR FALSE ADVERTISING (FIFTH CAUSE OF ACTION)**<br><br>Date:        October 31, 2012<br>Time:       9:00 a.m.<br>Courtroom:  3, Third Floor<br>Judge:      Hon. Phyllis J. Hamilton<br><br>Trial Date:   August 19, 2013 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 31, 2013, at 9:00 a.m. or as soon thereafter as the matter can be heard, before the Honorable Phyllis J. Hamilton, United States District Court, Oakland, California, Defendants and Counter-Claimants Amazon.com, Inc. and Amazon Digital Services, Inc. (collectively, "Amazon") will and hereby do move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Amazon respectfully requests that the Court grant this motion for partial summary judgment on the ground that Apple's Fifth Cause of Action for false advertising fails as a matter of law because Apple has not identified a single false statement that Amazon has made about the Amazon Appstore for Android. This motion is made pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56.

This Motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the Joint Statement Of Undisputed Facts Re Motion For Partial Summary Judgment; the supporting Declaration of Sarah J. Givan and exhibits; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted prior to or at the hearing.

## INTRODUCTION

A claim for false advertising under 43(a)(1)(B) of the Lanham Act requires two fundamental elements: (1) a false or misleading statement of fact (2) concerning the nature, characteristics or qualities of a product or service. Apple's Fifth Cause of Action for false advertising fails as a matter of law because Apple has not identified a single false statement that Amazon has made about the Amazon Appstore for Android. Apple alleges that the use of the word "Appstore" in Amazon's advertising of the Amazon app store is false advertising. But the word "Appstore" is part of the *name* of Amazon's store; it is not a statement about the nature, characteristics, or qualities of Amazon's store, much less a false one. What Apple is actually contending is that the use of "Appstore" may confuse consumers into believing that the Amazon Appstore is related to or sponsored by Apple. Leaving for another day whether that is a reasonable contention, it is clearly one that sounds in trademark, not false advertising. Apple's theory would turn every claim for trademark violation into an ipso facto false advertising claim. Courts have rejected such efforts, and this court should follow suit, particularly given Apple's own generic use of the term "app store." In short, there is no basis for Apple's claim that this same generic usage by Amazon is false advertising, and this Court should grant summary judgment for Amazon on Apple's false advertising claim.

## STATEMENT OF FACTS

**A.   Amazon's Use Of The Word "Appstore" In Advertising The Amazon Appstore For Android.**

The Amazon Appstore for Android (also referenced as the Amazon Appstore in connection with Amazon's tablet computer, the Kindle Fire) is an app store that allows a consumer to view and download apps for their Android-based devices. Declaration of Sarah J. Givan in Support of Amazon's Motion for Partial Summary Judgment ("Givan Decl"), ¶6 & Ex. 5 at ¶¶3-5. Users may access the Amazon Appstore either on their computers at the www.amazon.com website, on the Amazon Appstore app once they have downloaded that app to their Android mobile devices, and on Amazon's Kindle Fire tablet computer. *Id*. at Exs. 1-3, Ex. 5 at ¶5; Joint Statement of Undisputed Facts re Motion for Partial Summary Judgment ("UF") 1-3.

1    Because "Appstore" is part of the name of the Amazon Appstore for Android, most
2 advertising for the store uses the term "Appstore" in some fashion. For instance, the name
3 "Amazon Appstore for Android" appears on the homepage for Amazon.com. UF 2; Givan Decl.
4 Ex. 2. The name also appears as the header on the Amazon Appstore for Android webpage. UF 1;
5 Givan Decl. Ex. 1. The shorthand title, "Amazon Appstore," appears on a panel on the right side of
6 the Amazon Appstore for Android page as a link to instructions on how to download apps. UF 1;
7 Givan Decl. Ex. 1. On the Kindle Fire Apps webpage, Amazon refers to the Amazon Appstore for
8 Android and references the fact that the Amazon Appstore offers thousands of apps, all of them
9 Amazon-tested on Kindle Fire. UF 3; Givan Decl. Ex. 3. The back of the retail box containing the
10 Kindle Fire advertises "Amazon Appstore: Your favorite apps and games at your fingertips." UF 4;
11 Givan Decl. Ex. 4.

12    The function of such advertising is to direct viewers to, or identify to the consumer that she
13 has arrived at, the online store called the Amazon Appstore for Android. The only claims that
14 Amazon makes about the nature, characteristics or qualities of the Amazon Appstore are (1) it
15 contains thousands of apps and (2) apps have been tested to perform on the Kindle Fire. There is no
16 contention by Apple that these claims are false.

**B.    Apple's Amended Complaint Added A Claim For False Advertising But No New Allegations To Support That New Claim.**

19    In March 2011, Apple filed a complaint against Amazon alleging that Amazon's use of the
20 name "Amazon Appstore for Android" violated Apple's trademark, APP STORE. The complaint
21 asserted claims for trademark infringement under the Lanham Act Section 43(a)(1)(A) and
22 common law, dilution under Section 43(c) of the Lanham Act and unfair competition under
23 California state law. Apple sought a motion for preliminary injunction, which this Court denied.

24    In November 2011, Apple amended its complaint for a second time. The only factual
25 allegation that Apple added was that, coincident with the release of Amazon's Kindle Fire, Amazon
26 had begun to omit or de-emphasize "for Android" in the name of its app store and to refer to its app
27 store as simply "Amazon Appstore." Presumably, Apple amended to focus on the shorter name in
28 an attempt to strengthen Apple's likelihood of confusion argument for its trademark claim. In other

words, the new allegation pertains to Apple's trademark claim. Although Apple's Second Amended Complaint did not add any facts supporting or relating to false advertising, a claim that Apple had not previously plead, Apple added a new claim for false advertising under Section 43(a)(1)(B) of the Lanham Act.

## ARGUMENT

### C. A Claim For False Advertising Requires A False Statement Of Fact About The Nature, Characteristics or Quality Of The Seller's Product.

It has long been recognized that Section 43(a) of the Lanham Act addresses two distinct types of unfair competition: false designation of origin (palming off) and false description or representation about one's product or service. *See, e.g*, *Abernathy & Closther, Ltd. v. E&M Advertising, Inc.*, 553 F. Supp. 834, 837 (E.D.N.Y. 1982) ("With respect to [Section 43(a)], there are two prongs or 'legs' under which an action may be maintained."); *see also* 5 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §27.9 (4th ed. 2012) (section 43(a) codifies two "major and *distinct* types of 'unfair competition': (1) infringement of . . . unregistered trademarks, and . . . (2) 'false advertising'") (emphasis added). In 1989, Congress sharpened this distinction by dividing Section 43(a) into two subsections: 43(a)(1)(A), which prohibits infringement of unregistered marks and 43(a)(1)(B), which prohibits false advertising. Pub. L. No. 100-667, 102 Stat. 3935 (1988).

A false advertising claim requires the plaintiff to prove, *inter alia*, that the defendant made (1) a false or misleading statement of fact (2) about the nature, characteristics, or qualities of the defendant's product or service. *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) (the first element of a claim for false advertising is a false statement of fact). A statement of fact is one that "(1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (the statement at issue must be "a specific and measurable *claim*, capable of being proved false or of being reasonably interpreted as a *statement* of objective fact" (emphases added)). Statements of opinion, exaggerated claims and puffery are not actionable because they are not

statements of fact. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

Apple's false advertising claim is less actionable than non-actionable puffery, because Apple has not even identified a *statement* concerning the nature, characteristics or quality of Amazon's store, let alone a false one. Apple does not claim, for example, that Amazon's advertisements contain false comparisons between Amazon's store and Apple's (*e.g.*, "Just like the Apple Appstore!" or "Half the price of Apple's apps!"). Apple simply alleges that Amazon's use of the word "Appstore" in the name Amazon Appstore for Android "has a tendency to deceive consumers into believing that Amazon's service has the characteristics and/or qualities of Apple's APP STORE services." Second Amended Complaint ¶51. In other words, Apple claims that by using the word "Appstore" in the name of its store, Amazon implies that its store is affiliated with or sponsored by Apple. That is a garden variety trademark infringement claim. *See* 15 U.S.C. §1125(a)(1)(A) (prohibiting the use of a name that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities").

Apple's false advertising claim is thus based on precisely the same conduct and theory that forms the basis of Apple's false designation of origin claim. In effect, Apple claims that every act of trademark infringement or false designation of origin under section 43(a)(1)(A) also constitutes false advertising under section 43(a)(1)(B). Courts in this district have rejected this gambit and refused to permit a false advertising claim to go forward based on what is actually a claim of false designation of origin or trademark infringement. For instance, in *Walker & Zanger v. Paragon, Indus., Inc.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007), the plaintiff asserted that the defendant had infringed its trade dress in violation of 43(a)(1)(A) and also asserted a false advertising claim based on the same conduct—use of confusingly similar designs. The court rejected that claim as a matter of law. "Under this interpretation of section 43(a), trade dress violations would ipso facto constitute false advertising." *Id.* at 1182. Other courts have similarly rejected plaintiffs' efforts to base a false advertising claim solely on the use of some portion of a competitor's name. *See American Heritage*

1  *Life Ins. Co. v Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974) (defendant's use of a part of
2  plaintiff's name in its own name was not false advertising).

3  More generally, courts have resisted efforts to expand Lanham Act provisions to cover
4  conduct addressed by other statutory schemes.  In *Dastar Corp. v. Twentieth Century Fox Film
5  Corp.*, 539 U.S. 23 (2003), the Supreme Court rejected plaintiff's attempt to assert a false
6  designation of origins claim under Section 43(a)(1)(A) based on alleged false designation of
7  authorship.  The Court held that such a claim amounts to copyright infringement.  *Id.* at 34 ("[W]e
8  have been 'careful to caution against misuse or over-extension' of trademark and related protections
9  into areas traditionally occupied by patent or copyright").  Following *Dastar*, many courts have
10 rejected efforts to use 43(a)(1)(B) to accomplish what *Dastar* precludes by way of a false
11 advertising claim.  *See, e.g.*, *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d
12 394, 399-400 (S.D.N.Y. 2006) ("[T]he holding in *Dastar* that the word 'origin' in § 43(a)(1)(A)
13 refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics,
14 [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship.  If authorship were a
15 'characteristic[]' or 'qualit[y]' of a work, then the very claim *Dastar* rejected under § 43(a)(1)(A)
16 would have been available under § 43(a)(1)(B)").

17 The principle of *Dastar* pertains equally to Apple's attempt to turn this trademark case into a
18 false advertising case. As the Supreme Court identified, to permit a passing off claim for false
19 authorship would effectively create an end-run around the legal limits on other intellectual property
20 rights regimes, such as the time limits on patents and copyright protection.  *Dastar*, 539 U.S. at 37
21 (noting that to recognize a false designation of origin claim based on false authorship "would be
22 akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may
23 not do").  As with copyright and patent protections, courts universally recognize certain limits on
24 trademark property rights.  For example, a party who uses a name that is generic is not entitled to
25 trademark protection for that name.  *See, e.g.*, *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns,
26 Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999) ("If the term is generic, it cannot be the subject of
27 trademark protection under any circumstances, even with a showing of secondary meaning").  But
28 there is no "genericness" limit on false advertising claims. To recognize a false advertising claim

based on alleged misuse of a mark would be akin to finding that §43(a)(1)(B) created a species of trademark protection for generic marks.

Trademark infringement and false advertising are distinct types of wrongful conduct. Apple has not identified any conduct that supports a claim for false advertising and should not be permitted to piggyback on its trademark infringement claim to assert such a claim.

### D.  Apple's Own Use Of The Allegedly "False" Label Undermines Its False Advertising Claim.

Apple's own evidence further undercuts its claim that Amazon's use of the term "app store" is false. Apple's former and current CEOs have both used "app store" in reference to Apple's competitors' stores for apps. For example, former Apple CEO Steve Jobs touted the superiority of Apple's "integrated App Store" in comparison to what he described as the "four app stores on Android." UF 5. Mr. Cook echoed the same theme: "we fundamentally believe that our integrated approach delivers a far superior customer experience than the fragmented approach. And you can see this in a variety of ways from the fragmentation of the *number of App Stores out there* that people are going to pull their hair out, because they're going to have a variety of updating methodologies, and a variety of payment methods, and slightly different derivatives." UF 6 (emphasis added). *See also* UF 7 ("[W]e continue to believe and even more and more everyday that iPhone's integrated approach is materially better than Android's fragmented approach, where you have multiple OSs on multiple devices with different screen resolutions and multiple app stores with different roles, payment methods and update strategies."). What this establishes is that even if the use of the word "app store" is somehow considered a statement, Apple has made the very same statement with regard to other app stores in the marketplace. Apple presumably does not contend that its past and current CEOs made false statements regarding those other app stores to thousands of investors in earnings calls. To the contrary, the use of the term "app store" to refer to stores selling apps is commonplace in the industry and not a false statement.

### CONCLUSION

From its inception, this has been a simple trademark case. Apple has never alleged nor proffered the slightest evidence that Amazon has done anything other than adopt the name Amazon

1  Appstore for its store that sells apps.  Any effort to try to paste a false advertising label on
2  Amazon's use of the word appstore is unwarranted under the facts and the law.  The Court should
3  grant summary judgment for Amazon on Apple's false advertising cause of action.

Dated:  September 26, 2012               ARNOLD & PORTER LLP

                                         By:  /s/ *Martin R. Glick*
                                              MARTIN R. GLICK

                                              Attorneys for Defendants AMAZON.COM, INC.
                                              and AMAZON DIGITAL SERVICES, INC.