O'MELVENY & MYERS
DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
DAVID J. SEPANIK (S.B. #221527)
dsepanik@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Plaintiff
APPLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. CV 11-01327 PJH |
| Plaintiff, | **APPLE INC.'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON APPLE'S CLAIM FOR FALSE ADVERTISING (FIFTH CAUSE OF ACTION)** |
| v. | |
| AMAZON.COM, INC., a Delaware corporation, and AMAZON DIGITAL SERVICES, INC., a Delaware corporation | |
| Defendants. | Date: October 31, 2012<br>Time: 9:00 a.m.<br>Courtroom: 3, Third Floor<br>Judge: Hon. Phyllis J. Hamilton |
| | **[FILED UNDER SEAL]** |

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 7

    I.    AMAZON MISUNDERSTANDS APPLE'S FALSE ADVERTISING CLAIM AS RELATING TO AFFILIATION OR SPONSORSHIP ...................... 7

    II.    AN ACTIONABLE FALSE STATEMENT OF FACT MAY BE IMPLIED .................................................................................................................. 10

    III.    OCCASIONAL GENERIC USE BY APPLE IS IRRELEVANT ....................... 11

    IV.    APPLE'S FALSE ADVERTISING CLAIM IS SUPPORTED BY FACTS RELATING TO THE KINDLE FIRE RELEASE ............................................... 12

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*,
494 F.2d 3 (5th Cir. 1974)......................................................................................................... 9

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999)................................................................................................... 10

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990)................................................................................................... 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003).................................................................................................................. 10

*E. Air Lines, Inc. v. N.Y. Air Lines, Inc.*,
559 F. Supp. 1270 (S.D.N.Y. 1983).......................................................................................... 8

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000)................................................................................................... 10

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
642 F. Supp. 2d 1112 (C.D. Cal. 2009) .................................................................................. 11

*Potato Chip Inst. v. Gen. Mills, Inc.*,
333 F. Supp. 173 (D. Neb. 1971), *aff'd*, 461 F.2d 1088 (8th Cir. 1972) ............................. 8, 11

*PPX Enters., Inc. v. Audiofidelity Enters., Inc.*,
818 F.2d 266 (2d Cir. 1987), *abrogated on other grounds* ...................................................... 11

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)................................................................................................. 10

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011)................................................................................................... 11

*Univision Music LLC v. Banyan Entm't*,
2004 WL 5574359 (C.D. Cal. Nov. 15, 2004) ....................................................................... 11

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*,
661 F.2d 272 (2d Cir. 1981).................................................................................................... 10

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992)................................................................................................. 11

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
549 F. Supp. 2d 1168 (N.D. Cal. 2007) ................................................................................... 9

*William H. Morris Co. v. Grp. W, Inc.*,
66 F.3d 255 (9th Cir. 1995)..................................................................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page**

**STATUTES**

15 U.S.C. § 1125(a) .................................................................................................................. 10

15 U.S.C. § 1125(a)(1)(B) ............................................................................................... 10, 11, 12

**OTHER AUTHORITIES**

2 J. Thomas McCarthy,
  *McCarthy on Trademarks and Unfair Competition* (4th ed.) ...................................................... 8

**INTRODUCTION**

Amazon seeks summary judgment on only one of Apple's claims: the fifth cause of action for false advertising under the Lanham Act. But Amazon fundamentally misconstrues Apple's claim as one based on consumer confusion regarding the source or sponsorship of Amazon's service. The fifth cause of action involves nothing of the sort. Instead, it alleges that Amazon's use of the term "Appstore" misleads consumers regarding the nature, characteristics, and qualities of Amazon's service—specifically, that Amazon deceptively causes consumers to believe that Amazon's service is comparable to Apple's APP STORE ™ service in terms of the number and quality of applications available and in the ease of use and seamless integration that characterize Apple's service. The language of Apple's Second Amended Complaint makes this distinction abundantly clear:

> Amazon uses APPSTORE in connection with, and in commercial advertising or promotion of, its service and products. Amazon's use of APPSTORE constitutes a false advertisement that *misrepresents the nature, characteristics and qualities of Amazon's mobile download service* and/or deceives or has a tendency to deceive a substantial segment of consumers into believing that Amazon's service has the nature, characteristics, and/or qualities of Apple's APP STORE service.

(Second Amended Complaint ("SAC") ¶ 51 (emphasis added).)

In other words, some consumers may not think that Amazon's "Appstore" is affiliated with Apple—confusion that is the subject of other causes of action—but they may believe that the name "Appstore" indicates that Amazon's service has the same characteristics and qualities that make Apple's APP STORE service ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Consequently, Amazon's use of "Appstore"—particularly given that Apple's pioneering brand APP STORE is strongly associated with Apple's service and its characteristics and qualities—misrepresents the nature, characteristics, and qualities of Amazon's service and is likely to lead consumers to mistakenly believe that Amazon's service has the nature, characteristics, and qualities of Apple's service. This claim stands independent of Apple's trademark claims.

**STATEMENT OF FACTS**

APP STORE is a pioneering brand launched by Apple in 2008 for its mobile software download service for users of its iOS-based products (iPhone, iPod, and iPad). (Ex. A to Conley Decl. (Aug. 16, 2012 Expert Report of Gregory S. Carpenter ("Carpenter Report")) ¶ 13.) A pioneering brand—the first successful brand in a new market—plays a unique role in educating consumers about the product category as a whole while simultaneously building consumer affiliation between the product and the pioneer. (*Id.* ¶¶ 12, 24.)

This is unsurprising, given that consumers have downloaded over 25 billion applications through the APP STORE service,

Apple's advertising, marketing, and press releases for the APP STORE service have highlighted its key qualities and characteristics, such as its vast application catalog (with over 700,000 titles currently available) (Ex. E to Conley Decl. (Examples of Apple press releases)), the availability of the best and most popular applications, and the ease of use and seamless integration of the service with Apple's iOS-based products. (*See* Ex. F to Conley Decl. (Examples of Apple APP STORE service advertisements).)







Amazon adopted "Appstore" as the name for its service. Amazon concedes that it uses the term "Appstore" not generically but as the name of its service. (Motion for Partial Summary Judgment on Apple's Claim for False Advertising ("Mot.") at 1:7-8; 3:1-2.) Amazon does not use the term "app store" simply as a generic term to characterize a class or type of product; instead, Amazon uses "Appstore" as the actual name of its specific service, emphasizing that it is a service name both by capitalizing the term and by running "app" and "store" together into a single word.

Amazon uses different iterations of the product name depending on context, space constraints, and hardware interoperability, but the word "Appstore" is consistently used as a

name, not generically. The service is sometimes called the "Amazon Appstore for Android":

**Amazon Appstore for Android**
Get a great paid app for *free* every day

sometimes the "Appstore for Android":

Shop by
**Department** ▼

Appstore for Android

and sometimes just the "Amazon Appstore":

**Getting Started with the Amazon Appstore**

(Ex. P to Conley Decl.) In conjunction with the Kindle Fire line of tablet device products, for example—which Amazon markets as competitors to Apple's iPad tablet device—the service is called the "Amazon Appstore":



6

OPPOSITION TO PARTIAL MSJ
CASE NO. 11-01327 PJH

1 or simply "Appstore.":

6 (Ex. Q to Conley Decl. (*see also* additional examples contained therein).)

## ARGUMENT

### I. AMAZON MISUNDERSTANDS APPLE'S FALSE ADVERTISING CLAIM AS RELATING TO AFFILIATION OR SPONSORSHIP.

Amazon fatally mischaracterizes Apple's false advertising claim as relating to affiliation or sponsorship of Amazon's service—a "garden variety infringement claim" (Mot. at 5:12)—rather than as to the characteristics of that service. But Apple does not claim "that by using the word 'Appstore' in the name of its store, Amazon implies that its store is *affiliated with or sponsored by* Apple." (Mot. at 5:10-12 (emphasis added).) Instead, Apple's fifth cause of action claims that Amazon's use of "Appstore" in the name of its service misleads customers to believe that Amazon's service has the *nature, characteristics and qualities* consumers have come to associate with the APP STORE name. (Second Am. Compl. ¶ 51 (emphasis added).)

In his treatise on trademark and unfair competition law, Thomas McCarthy describes precisely the kind of false advertising claim Apple has alleged, albeit in the context of a non-protectable trademark:

> Even if the company that introduces a new product on the market does not establish trademark rights in the product designation, that company may have a false advertising claim against a junior user who uses that generic designation in a misleading way. This can occur when a newcomer uses a generic term to falsely claim to be selling the same generic product or service identified by that term as does the established company. For example . . . assume that

> [a company introduced a new] communications device and that device became known to the public by the generic name "radon." Then [the company] found that a competitor was calling its product a "radon," but the competitor's "radon" did not embody all of the unique features the public associates with a true "radon." In that instance, a false advertising claim exists. This kind of false advertising claim can prove useful to companies that innovate and introduce new devices and services with new names, as occurs almost daily in the computer, communications and Internet markets.

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:26 (4th ed.).

Similarly, in *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F. Supp. 1270 (S.D.N.Y. 1983), the plaintiff, who offered a high-quality and reliable "shuttle" air service between New York and Washington, D.C., stated an actionable false advertising claim against a junior user who adopted plaintiff's name "shuttle," despite not possessing the characteristics and qualities that the public had come to expect from a "shuttle" service. The court recognized that, as used by plaintiff, the word "shuttle" had come to denote certain characteristics and qualities such as guaranteed seating and frequent service—neither of which was provided by the defendant. *Id.* at 1277. "In short, the new competition was not in fact providing a 'shuttle' air service." 2 *McCarthy*, *supra*, § 12:48; s*ee also Potato Chip Inst. v. Gen. Mills, Inc.*, 333 F. Supp. 173, 180 (D. Neb. 1971), *aff'd*, 461 F.2d 1088 (8th Cir. 1972) (concluding that "the phrase 'potato chip,' standing alone, is a generic term which is capable of including both chips made of raw potatoes and chips made of dehydrated potatoes, but that the past experience of the consumer so shades the term with a raw potato overlay that the phrase tends to mislead the public and thus falsely to describe a product basically made of dehydrated potatoes").

Notwithstanding the fact that it is joined with Apple's trademark claims—which do relate to affiliation or sponsorship of Amazon's service—Apple's fifth cause of action is identical to the claims supported by McCarthy, *Eastern Air Lines*, and *Potato Chip Institute*. Apple claims that despite using the "Appstore" in its name, Amazon's service does not possess the characteristics and qualities that the public has come to expect from the name APP STORE based on familiarity with Apple's service. Amazon's use of the term "Appstore" therefore misleads the public.

Amazon's decision to name its service "Appstore" is more misleading than the type of false statement Amazon apparently concedes would be misleading—"Just like the Apple

1  Appstore! [sic]" (Mot. at 5:6-7)—because Amazon's use of the name implies a false equivalence
2  without cuing consumers to test this claim. ████████
3  ████████████████████████████████████████████████
4  ████████████████████████████████████████████████
5  ██████████████████████████████████████ By
6  contrast, Apple's service has over 700,000 applications. (Ex. E to Conley Decl. (Examples of
7  Apple press releases).) ████████████████████████
8  ████████████████████████████████████████████████
9  ████████████████████████████████████████████████
10 ████████████████████████████████████████████████
11 ████████████████████████████████████████████████
12 ████████████████████████████████████████████████
13 ████████████████████████████████████████████████
14 ████████████████████████████████████████████████
15 ████ ████ ████████████
16 ████████████████████ Consumers who see the name "Appstore" could easily be
17 misled into believing, at least, that Amazon's service is comparable in terms of application
18 quantity to Apple's service, ████████████████
19 ████████████████████████████████████████████████
20 ████████████████████████████████████████████████
21 ████████████████████████████████████████████████
22 ████████████████████████████████████████████████
23 ████████████████████████████████████████████████
24 ████

25     Thus, the cases Amazon cites are inapposite. Apple is not simply rehashing trademark or
26 trade dress infringement claims in the guise of a false advertising claim, like the plaintiffs in
27 *Walker & Zanger, Inc. v. Paragon Industries*, *Inc.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007), and
28 *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.*, 494 F.2d 3 (5th Cir.

1974). Nor is it making a false designation of origin claim akin to the false designation of authorship claim alleged in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Instead, Apple is making a clear and independent claim for false advertising on the grounds that (1) consumers associate the name "App Store" with Apple's APP STORE service; (2) consumers therefore associate the key qualities and characteristics of Apple's APP STORE service with the name "App Store"; (3) Amazon uses the almost identical name "Appstore" for its service; and (4) consumers, even if they are not confused as to the origin of Amazon's service, are likely to be misled by Amazon's use of the name "Appstore" and mistakenly believe that Amazon's service possesses the qualities and characteristics that customers have come to expect from the name "App Store." The false advertising claim is legally and factually independent of Apple's trademark claims.

## II. AN ACTIONABLE FALSE STATEMENT OF FACT MAY BE IMPLIED.

Despite Amazon's emphasis on the word "statement" in its Motion, a "statement" requirement appears nowhere in Section 43(a) of the Lanham Act. Nor does any case Amazon cites find that a false advertising claim fails for lack of a "statement." *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) (false advertising claim survived summary judgment); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000) (claim failed for lack of evidence that false advertising was material to purchasing decisions); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) (false advertising claim failed because defendants' claims could not be proven false or misleading); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990) (false advertising claim failed because allegedly misleading advertisements were mere "puffery").

Amazon cannot cite authority for its contention that Apple must point to a "statement" because the Lanham Act does not require an explicit statement of fact. "It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257-58 (9th Cir. 1995) (*citing Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981)). Courts routinely find violations of 43(a)(1)(B) based on

1  implied statements of fact. *See, e.g.*, *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828
2  (9th Cir. 2011) (plaintiffs' false advertising claim valid based on implicit statement that website
3  was endorsed by DMV); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d
4  1112, 1120 (C.D. Cal. 2009) (plaintiff stated a false advertising claim against defendant by
5  alleging that name of defendant's product misled consumers); *Potato Chip*, 333 F. Supp. at 180
6  (plaintiff stated a false advertising claim against defendant by alleging that name of defendant's
7  product, absent clear disclaimer indicating characteristics product did not possess, misled
8  consumers).

9        Amazon's argument that Apple has failed to identify a "statement" is therefore
10 misplaced. As explained in Section I, *supra*, Amazon's use of "Appstore" in its name and in
11 advertising misleads consumers into thinking that its service possesses the characteristics and
12 qualities that consumers have come to associate with the term "App Store." False advertising
13 proscribes fraudulent representations that goods or services have particular characteristics or
14 qualities that they do not in fact have—particularly when the goods or services of a competitor do
15 have such qualities. *Univision Music LLC v. Banyan Entm't*, 2004 WL 5574359, at *4 (C.D. Cal.
16 Nov. 15, 2004) (quoting *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 272 (2d
17 Cir. 1987), *abrogated on other grounds*); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.
18 1992) (noting that the false advertising prong of the Lanham Act proscribes "false representations
19 in advertising concerning the qualities of goods or services"). Apple claims that Amazon's use of
20 "Appstore" in its name creates precisely the type of fraudulent misrepresentation that Lanham Act
21 Section 43(a)(1)(B) prohibits.

22 **III. OCCASIONAL GENERIC USE BY APPLE IS IRRELEVANT.**

23       Contrary to Amazon's argument, the occasional generic use of "app store" by Apple
24 executives in no way insulates Amazon's false advertising of its service. As an initial matter, the
25 generic uses cited in Amazon's motion were not misleading: in each of them, Apple executives
26 were conveying accurate information about the distinction between the seamless integration
27 inherent in Apple's service and the fragmented nature of Android-based services. In other words,
28 the context of the statements makes abundantly clear that the Apple executives were conveying

precisely the opposite of what Amazon is conveying—that the qualities and characteristics of the competing services are different, not the same.

Moreover, as Amazon notes, "It has long been recognized that Section 43(a) of the Lanham Act addresses two distinct types of unfair competition: false designation of origin (palming off) and false description or representation about one's product or service." (Mot. at 4:8-10.) The validity or genericness of the APP STORE mark—an issue related to the first type of unfair competition—is entirely irrelevant to Apple's false advertising claim under the second type of unfair competition. Accordingly, Apple's occasional generic use of the APP STORE mark is irrelevant to this claim and this motion.

### IV. APPLE'S FALSE ADVERTISING CLAIM IS SUPPORTED BY FACTS RELATING TO THE KINDLE FIRE RELEASE.

Amazon claims incorrectly that Apple's SAC "did not add any facts supporting or relating to false advertising." (Mot. at 4:1-2.) Although Apple added numerous facts to its SAC, the most significant factual developments between the filing of the Amended Complaint and the SAC were Amazon's launch of the Kindle Fire, a tablet device that competes with Apple's iPad device, and Amazon's alteration in its use of Apple's mark by omitting or deemphasizing the "for Android" suffix that Amazon had used previously. Apple's SAC referenced these new facts. (SAC ¶¶ 2, 29-30.) These new factual developments directly support Apple's fifth cause of action—particularly Amazon's use of "Appstore" without the qualifier "for Android," a change that heightens the likelihood that consumers will mistakenly conclude that Amazon's service has the characteristics of the APP STORE service.

### CONCLUSION

Amazon's use of "Appstore" in its name constitutes false advertising under Section 43(a)(1)(B) of the Lanham Act because it misleads consumers as to the nature, characteristics, and qualities of Amazon's service. For the foregoing reasons, Amazon's motion should be denied.

1  Dated:  October 10, 2012

2  O'MELVENY & MYERS LLP

3  By:  */s/ David R. Eberhart*
4  DAVID R. EBERHART
   Attorneys for Plaintiff APPLE INC.