DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
DAVID J. SEPANIK (S.B. #221527)
dsepanik@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:	415.984.8700
Facsimile:	415.984.8701

Attorneys for Plaintiff and Counter-Defendant
APPLE INC.

MARTIN R. GLICK (No. 40187)
marty.glick@aporter.com
DANIEL B. ASIMOW (No. 165661)
daniel.asimow@aporter.com
SEAN M. CALLAGY (No. 255230)
sean.callagy@aporter.com
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California  94111-4024
Telephone:	415.471.3100
Facsimile:	415.471.3400

Attorneys for Defendants and Counter-Claimants
AMAZON.COM, INC., a Delaware corporation,
and AMAZON DIGITAL SERVICES, INC., a
Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　Plaintiff and<br>　　　　　Counter-Defendant,<br><br>　vs.<br><br>AMAZON.COM, INC., a Delaware corporation, and AMAZON DIGITAL SERVICES, INC., a Delaware corporation,<br><br>　　　　　Defendants and<br>　　　　　Counter-Claimants. | Case No. 11-cv-01327 PJH<br><br>Action Filed:  March 18, 2011<br><br>**JOINT DISCOVERY LETTER BRIEF CONCERNING EXPERT DISCOVERY MATTER**<br><br>Courtroom:	F, Fifteenth Floor<br>Judge:	Hon. Jacqueline Scott Corley<br><br>Trial Date:	August 19, 2013 |

**JOINT LETTER BRIEF CONCERNING EXPERT DISCOVERY MATTER**

Pursuant to Federal Rules of Civil Procedure 26 and 37, and the Civil Standing Order for Magistrate Judge Jacqueline Scott Corley, Defendants and Counter-Claimants Amazon.com, Inc. and Amazon Digital Services, Inc. (collectively, "Amazon") and Plaintiff and Counter-Defendant Apple, Inc. ("Apple") hereby jointly submit the following discovery letter brief. Amazon asks that Apple be compelled to produce undisclosed survey work conducted by Brian Dragun and Tim Hoffman of Crossfield Associates, LLC, and to make Messrs. Dragun and Hoffman available for deposition. Apple opposes this motion.[1]

**Amazon's Statement Of Relevant Facts**

Apple disclosed Dr. Carol Scott of Crossfield Associates, LLC ("Crossfield") as a testifying survey expert in this case. Dr. Scott's report disclosed that she conducted four surveys in mid-2012. It is undisputed that Dr. Scott received substantial assistance from two of her colleagues at Crossfield to design, deploy, and analyze the results of the surveys. Those two individuals are Brian Dragun and Tim Hoffman. Apple produced with the Scott report billing records that show the amount expended in connection with Dr. Scott's work and those included the time spent by Mr. Dragun and Mr. Hoffman from January to September 2012. At the deposition of Dr. Scott it became apparent that Mr. Dragun and Mr. Hoffman ran at least one additional survey for this litigation early in the course of their working with and assisting Dr. Scott. Amazon seeks discovery of the undisclosed survey work because of the high likelihood that it has influenced and informed the surveys upon which Dr. Scott's report and opinions are ostensibly based, and indeed may contradict or undermine the conclusions that Dr. Scott offers.

Amazon first learned of the undisclosed survey work when Apple produced the invoices and discoverable materials related to Dr. Scott's work.[2] The Crossfield invoices showed that two individuals, Brian Dragun and Tim Hoffman, have each devoted far more time to this case than Dr. Scott, especially in the months of January-March of 2012. In this time, Messrs. Dragun and Hoffman had daily entries for items such as "Survey development," "Reviewed results," "Worked on survey," "Worked on survey draft," "Worked on survey and analyses," and "Review of survey work." The February 2012 invoice shows "Research fees" of $25,716—consistent with the cost of fielding a survey. The invoices show that all three individuals continued to work on this case up until the time Dr. Scott's report was disclosed. From January to September 2012, Messrs. Dragun and Hoffman each worked more than twice as many hours on this matter as Dr. Scott.

When asked at deposition about these entries and whether Crossfield's Mr. Dragun conducted a survey in *this* case that was not disclosed in her report, Dr. Scott claimed ignorance and testified: "Well, I don't know if he did or he didn't. I would only know what was done if I was involved in it." (Scott Depo. Tx. 65:4-6) When asked if it was *possible* her colleagues did a survey she didn't know about, Dr. Scott testified: "You know, it's entirely possible that they were doing pilots or they were doing something for Apple that wasn't related to me at all." (*Id.* 65:10-12) Dr. Scott simply could not say what the undisclosed work consisted of: "I am not able to tell you what they were doing." (*Id.* 66:3-4)

In addition to their initial survey work, apparently claimed to be some sort of separate engagement of which Dr. Scott was allegedly kept in the dark despite the production of the invoices for that work, Messrs. Dragun and Hoffman went on to design, implement, monitor, analyze, and write up the surveys upon which Dr. Scott's report is based. It is apparent from the invoices that the members of Crossfield collaborated "hand-in-glove" for many months to produce the Scott report.

---

[1] This case was referred to Magistrate Judge Corley for resolution of all discovery matters.

[2] The parties agreed at the outset of expert discovery to produce all invoices and materials discoverable under the stipulated protective order one week prior to each expert's deposition.

Dr. Scott testified that when she and her colleagues at Crossfield obtain and analyze survey data, Messrs. Dragun and Hoffman "will do all the initial putting together," and "after they've done the initial work, then that's when I get involved." (*Id.* 69:7-15)  Yet Dr. Scott could not recall whether she designed the surveys herself or if this was done in collaboration with Messrs. Dragun and Hoffman.  (*Id.* 71:21-72:4)  She did testify that Mr. Hoffman did a "cleaning" of the data before Dr. Scott saw it, and that she, Mr. Hoffman and Mr. Dragun may have jointly examined and discussed the data.  (*Id.* 86:25-88:3).

Following the deposition, Amazon wrote to request that Apple produce the undisclosed Crossfield surveys.  In reply, Apple acknowledged the existence of undisclosed work yet claimed that, aside from closely assisting Dr. Scott, Mr. Dragun *also* acted as a consulting survey expert for Apple, assisted by Mr. Hoffman.  Apple said this work was protected by Rule 26(b)(4)(D) and was not discoverable under the stipulated protective order.  Apple also claimed that "Dr. Scott is not familiar with Mr. Dragun's work as a non-consulting expert because that work was not discussed with Dr. Scott, she does not rely upon it in any way, and it does not comprise facts or data considered by her in forming the opinions set forth in her reports."  In a responsive letter, Amazon cited the authorities discussed below.  These show that a party is entitled to discovery of *all* information related to a testifying expert's work, including the work of her assistants.  Moreover, when a "non-testifying" consultant also performs "testifying" expert work, any ambiguity in the role played by the consultant must be resolved in favor of discovery.  Therefore, Apple must produce all undisclosed survey materials and make Messrs. Dragun and Hoffman available for deposition.  Further, Amazon is entitled to test the very notion that these Crossfield employees worked side-by-side on this same project with the left hand completely unaware of the work of the right hand.  The parties met and conferred in person on February 28, 2013.  As before, Apple maintained that *no part* of the undisclosed work was discoverable.

**Amazon's Position and Legal Authorities**

*1. Amazon Is Entitled To Discovery Of All Work Done By Messrs. Dragun and Hoffman.*

The work of a testifying expert's assistant is discoverable, both by document discovery and depositions.  *See Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538, at *6-7 (D. Md. Mar. 19, 1999), *aff'd sub nom. Johnson v. Circuit City Stores, Inc.*, 203 F.3d 821 (4th Cir. 2000).  In *Derrickson*, a testifying expert, Dr. Medoff, relied on tables regarding compensation and promotions that were "based on data that was subjected to various selection, aggregation and weighting processes performed by Dr. Medoff's assistant."  *Id.*  The court rejected the assertion—exactly that now put forth by Apple—that the assistant's work was non-discoverable work-product:

> The court need not waste its time analyzing the work of Dr. Medoff's assistant as the work of a so-called "non-testifying" expert.  Dr. Medoff and his assistant worked hand-in-glove, and the fruits of their labor are indivisible.  Defendant cannot properly cross-examine Dr. Medoff without first understanding how his assistant manipulated the data . . . .  Dr. Medoff's opinions in this matter are the result of a seamless collaboration with his assistant.  Under these circumstances, Defendant is entitled to know what Dr. Medoff's assistant did.  (*Id.*)

In the alternative, the court held that even *if* the assistant were a consultant, discovery was consistent with the purpose of Rule 26(b)(4)(B) because the information was sought to undermine and impeach the testifying expert's report.  *Id.* at *7.  Moreover, the court found "exceptional circumstances" requiring production because "[o]nly Dr. Medoff's assistant knows what he did to the data, and because that information is exclusively within the assistant's cognizance, Defendant is entitled to it under Rule 26(b)(4)(B)."  *Id.*

Other courts have held that a party in Apple's position cannot withhold discovery of the work of "assistants" to a testifying expert under the fiction that these individuals are separately

engaged, non-testifying consultants. *See Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002) ("[T]he evidence clearly demonstrates that the expert report submitted by Mr. Gordon was the result of substantial collaborative work by he and Mr. Sommer. Mr. Sommer performed more than half of the total 329.25 hours it took to generate the expert report, and accounted for more than half of the $61,305.00 fee. Under these circumstances, the fruits of Gordon Associates' labor is indivisible, and defendant is entitled to explore what Mr. Sommer did."); *see also Long-Term Capital Holdings v. United States*, No 01-cv-1290(JBA), 2003 WL 21269586, at *4 (D. Conn. May 6, 2003) (holding that a deposition concerning the "participation of [consulting] personnel in the preparation and drafting of the expert reports and the extent of any meetings and contacts between [consultants] and [the testifying expert] does not invoke the work product concerns underlying Rule 26(b)(4)(B)"); *Heitmann v. Concrete Pipe Mach.*, 98 F.R.D. 740, 741 (E.D. Mo. 1983) (holding that there was "substantial need" to order production of consulting expert's work product where testifying expert considered it in preparing his report; without it, "plaintiff will not be able to effectively cross-examine [the expert]").

Even if Apple initially attempted to hire the members of Crossfield in separate capacities so it could try to pick and choose what to disclose and what to hide, their close collaboration over the course of many months caused the line between testifying expert and consultant to become hopelessly blurred. If an expert wears these "two hats," privilege may be asserted "only over those materials generated or considered *uniquely in the expert's role as consultant*." *S.E.C. v. Reyes*, No. C 06-4435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) (emphasis added); *see also B.C.F. Oil Refining, Inc. v. Consol. Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) ("any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery"). Apple cannot avoid the clear mandate of these cases by its self-serving assertion that Mr. Dragun's work is unrelated to Dr. Scott's opinions. Mr. Dragun performed his "consulting" work before or during the time in which he was assisting with Dr. Scott's "testifying" work. If the Dragun and Hoffman work in early 2012 were truly independent, then Apple would not have produced the Crossfield invoices as incident to the work of Dr. Scott. That they did produce it is telling. Further, Dr. Scott could not confirm that the earlier survey had no influence upon her opinion, and Apple only offers attorney argument that Dragun's work was performed *uniquely* in a consultant role. Amazon is entitled to test how it influenced Dr. Scott's opinions because it is apparent that Crossfield's employees worked "hand-in-glove" with Dr. Scott.

Apple's position, supported only by attorney argument, merits no weight. *B.C.F.*, 171 F.R.D. at 62 ("Defendant should not have to rely on plaintiff's representation that these documents were not considered by the expert in forming his opinion."). *First*, because "[t]he term 'expert' *includes assistants* of the expert witness," any information Mr. Dragun has must imputed to Dr. Scott. *Schwarzer et al.*, Federal Procedure Before Trial §11:377.2 (citing Advisory Comm. Notes to 2010 Amendment to Rule 26(b)(4)) (emphasis in original). *Second*, to allow fair cross-examination of experts, courts require discovery into what an expert (and by extension, the expert's assistant) considered, even when the expert claims under oath that the materials were *not* considered or relied upon—which in any event Dr. Scott was unable to do because she claims no knowledge of the undisclosed work. *See In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 537 (N.D. Ohio 2008) ("[E]xperts have been deemed to have considered materials even when they have testified, under oath, that they did not consider the materials in forming their opinions.") (citations omitted); *In re Air Crash Disaster*, 720 F. Supp. 1442, 1444 (D. Colo. 1988) (under Rule 26(b), "an expert 'relies' upon material he finds unpersuasive as well as material supporting his ultimate position."); *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) ("A testifying expert must disclose and therefore retain whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination."). Finally, Apple's repeated reliance on *Westrick* is misplaced. That court (a) echoed the general rule that a close nexus between "testifying" and "consulting" experts justifies disclosure; (b) found that the possibility of influence by the non-testifying expert's work justified further discovery through

both via "substantial need" and the "exceptional circumstances" provision of Rule 26(b)(4)(D)(ii); and (c) ordered discovery in spite of a sworn declaration of non-reliance by the testifying expert—not present here. Amazon is entitled to probe the degree of interrelation between Mr. Dragun's undisclosed survey work and Dr. Scott's ultimate opinions and should not be forced to rely on Apple's representations.

*2. The Stipulated Protective Order Does Not Prohibit Discovery Of Mr. Dragun's Work.*

Apple also claims immunity from discovery of Mr. Dragun's work because under the stipulated protective order, "[d]iscovery of materials provided to testifying experts shall be limited to those materials . . . actually relied upon by the testifying expert." This provision does not apply here. *First*, Amazon does not seek discovery of materials "provided to" Crossfield, but instead materials *generated by* Mr. Dragun and Crossfield. *Second*, the materials are sought for impeachment purposes, which the protective order does not limit, and for which "exceptional circumstances" do exist, requiring production. *Third*, Amazon is not seeking discovery of communications between Crossfield and counsel. Amazon's request implicates neither Rule 26(b) nor the purposes of the protective order.[3] *Fourth*, Apple is taking inconsistent positions. On the one hand, it insists Dr. Scott has no knowledge of Mr. Dragun's work. On the other, Apple wants to quash discovery under the theory that this work was "provided to" Dr. Scott yet not "relied upon." Apple cannot have it both ways. Apple must produce Mr. Dragun's survey work and related materials and make Messrs. Dragun and Hoffman available for deposition.

**Apple's Statement of Relevant Facts**

Amazon requests discovery of consulting expert work that is not responsive to any discovery request and is protected from disclosure by both the Federal Rules and the Stipulated Protective Order ("SPO") entered in this case. Amazon issued no discovery requests regarding experts; instead, the parties agreed to produce (i) materials relied on by the experts and (ii) the experts' invoices. Apple has produced all such materials: Apple's testifying expert, Dr. Carol Scott designed and directed four surveys, and Apple has produced her report on those surveys, all underlying raw data from those surveys, all material she considered or relied on in forming her opinions, and her firm's invoices. Amazon points to nothing that Dr. Scott has failed to produce. Instead, Amazon seeks discovery of work by consulting experts Brian Dragun and Tim Hoffman.

Dr. Scott and Messrs. Dragun and Hoffman work at the same consulting firm, Crossfield Associates LLC ("Crossfield"). Apple disclosed Dr. Scott and Mr. Dragun to Amazon as outside experts under the SPO on February 21, 2012, so that those individuals could review materials designated by Amazon under the SPO. Amazon did not object to that designation. Messrs. Dragun and Hoffman performed work for Apple as non-testifying, consulting experts; in addition, they assisted Dr. Scott in preparing her four consumer surveys. Apple produced invoices for all of the work billed by Crossfield—both consulting and testifying—in accordance with the parties'

---

[3] The provision cited by Apple logically only applies to communications, drafts, and work product shared among *counsel* and an expert. The purpose of this passage is to make clear that the new expert disclosure rules would govern this action and to promote open and frank communication between counsel and expert. If Apple's expansive reading is correct, then no expert need disclose material considered but not expressly and affirmatively incorporated into the expert's report and opinions. This would dramatically curtail the parties' disclosure obligations under Rule 26(a)(2)(B) and inhibit cross-examination. It would also nullify the provision of the Protective Order stating that "[n]othing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure." Stip. Protective Order ¶22(g), Jan. 3, 2012 [Dkt. 61], at 21.

agreement and Federal Rule 26(b)(4)(C)(i), which makes discoverable invoices of an "organization associated with the expert."[4]

To the extent Messrs. Dragun and/or Hoffman created materials that were considered or relied on by Dr. Scott, Apple has produced them. To the extent Dragun and/or Hoffman have generated materials in their consulting expert capacities, such materials are protected from disclosure by the attorney work product doctrine articulated in Rule 26(b)(3). That work is also protected by Rule 26(b)(4)(D) which provides: "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

Dr. Scott is not familiar with the Dragun/Hoffman consulting work because that work was neither discussed with nor provided to her and, logically, she cannot consider or rely on work that is unknown to her. In sworn deposition testimony, Scott explained that Dragun and Hoffman "may have been doing something for Apple that wasn't related to me at all," that she had no knowledge of what they may or may not have done as consulting experts, that she was unaware of any Crossfield survey work except for the four surveys she designed and fielded, and "the only [surveys] that I am relying on are the ones that I personally was involved in, and the ones that I personally was involved and conducted are the ones that are presented in my report." (Scott Depo. at 63:13-66:4.) Accordingly, neither the Federal Rules—which require production of facts and data considered by the witness in forming her opinions—nor the SPO—which requires production of materials the expert relied on in forming her opinions—require production of the Dragun/Hoffman consulting work. Contrary to Amazon's assertion, Apple has never stated that consulting work product was "provided" to Dr. Scott but not relied on; nor did that occur. Although Amazon claims that the Dragun/Hoffman consulting work and the Scott testifying work have become "hopelessly blurred" and that "Amazon is entitled to probe the degree of interrelation between Mr. Dragun's undisclosed survey work and Dr. Scott's ultimate opinions," Amazon did not establish those claims at Scott's deposition. To the contrary, Amazon asked only one short line of questions about Dragun's and Hoffman's participation in the design of Scott's four surveys. (*Id*. at 83:17-85:20). By contrast, Amazon asked Scott dozens if not hundreds of questions about how and why each element of the surveys was selected, and she never once referred to Dragun or Hoffman. (*See generally id.* at 95-244). Instead, Scott explained, in detail, her rationale for selecting each survey element. *Id.*

Dr. Scott is familiar with, and has testified to, the assistance Messrs. Dragun and Hoffman provided regarding the surveys that are the subject of her report, and Apple has produced all materials underlying those surveys. Amazon has not shown and cannot show that Scott is not competent to testify as to the entirety of the work on her four surveys. Thus, any discovery from Dragun and Hoffman would target their separate consulting work and directly undermine Rule 26(b)(4)(D)'s protection of work performed by a non-testifying consulting expert witness.

Moreover, before the current version of Rule 26(b)(4)(D) became effective, *Amazon* proposed language to the SPO that set an even higher bar to discovery from non-testifying consulting experts. During negotiations, Amazon proposed the following:

> No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

---

[4] The Advisory Committee Notes to the 2010 Amendment to that rule state: "This exception includes compensation for work done by a person or organization associated with the expert. The objective is to permit full inquiry into such potential sources of bias."

Apple agreed to this limitation, and the parties included it in the final SPO entered January 3, 2012. The parties later confirmed these restrictions, when Apple's counsel wrote, "I presume you don't intend to alter the limitations on expert discovery in our protective order; accordingly I think the only expert-related materials the parties would be producing are those materials the experts relied on and the experts' invoices," and Amazon's counsel replied, "Correct. We were not attempting to expand the scope of discovery." (D. Asimow to D. Eberhart email of Sep. 12, 2012.)

**Apple's Position and Legal Authorities**

Amazon argues that consulting expert work performed by Messrs. Dragun and Hoffman is discoverable because they assisted Dr. Scott with her testimonial survey work, even though it is uncontested that any such consulting expert work was never disclosed to or discussed with—let alone relied on by—Dr. Scott. Amazon's position is entirely unsupported by law.

Materials not considered or relied on by a testifying expert need not be disclosed. *See, e.g.*, *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, ___ F.R.D. ___, 2012 WL 6599866 at *7 (D.D.C. 2012). Amazon offers no authority suggesting otherwise. Instead, Amazon cites cases in which documents or information possessed by an assistant or consulting expert *were relied on* by a testifying expert and were, on that basis, required to be produced. For example, in *Derrickson v. Circuit City Stores*, 1999 WL 1456538 at *7, the court ordered discovery from the testifying expert's assistant because he possessed exclusive knowledge about the construction of statistical tables the testifying expert relied on in his report. Specifically, the court required plaintiff to disclose the details of the assistant's analysis and supporting documentation used in preparing the expert's report. Similarly, in *Heitmann v. Concrete Pipe*, 98 F.R.D. at 72, plaintiff sought access to documents prepared by defendant's consulting expert and shared with its testifying expert. The court held that these documents must be produced because the testifying expert admitted to relying on them "as part of my input." *Id.* These cases are inapposite. Apple has already produced all facts and data Scott considered or relied on in forming her opinions, including but not limited to Excel spreadsheets containing the details of her analysis and supporting documentation.

It is not in dispute that, absent the effect of the SPO, Rule 26 would require disclosure of data or information that Dr. Scott considered but did not rely on in forming her opinions. *See In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. at 537 (must disclose materials testifying expert reviews or generates); *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d at 751 (must disclose materials given to testifying expert but not considered); *In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. at 1444 (must disclose materials testifying expert reviews but disregards). But the work Amazon seeks was never provided to, discussed with, or considered by Scott.

The Federal Rules explicitly protect from discovery the work of consulting experts like Messrs. Dragun and Hoffman. *See* F.R.C.P. 26(b)(4)(D). That protection cannot be overcome by Amazon's speculation that Mr. Dragun's work "influenced and informed" Dr. Scott's surveys and opinions. *See U.S. ex rel. Westrick,* 2012 WL 6599866 at *4, 7 (refusing to require disclosure of consulting expert's work based on "nothing more than speculation" that testifying expert relied on it). In *Westrick,* a consulting expert spent over six years testing bulletproof vests and ultimately provided some of those vests to the testifying expert. The testifying expert testified that he never received any information relating to the consulting expert's work. *Id.* at *4. Based on that testimony, the court determined that "there has not been a waiver of work product protection." *Id.* The court then considered whether the work product immunity could be overcome. In doing so, the court distinguished between (a) "information regarding any pre-testing of [the vests] and the ultimate selection of vests [by the consulting expert], [that] by its very nature, encompasses opinions, legal theories, and/or litigation strategies" that *should not* be provided, and (b) information regarding the consulting expert's storage and care of the vests before they were provided to the testifying expert, that was "purely factual information" that *should* be provided

based on a showing of substantial need. *Id.* Putting aside the fact that Amazon has failed to demonstrate "substantial need" for anything, Amazon seeks nothing analogous to the purely factual storage and care of vests in *Westrick*. Instead, Amazon seeks exactly the type of consulting expert information that *Westrick* found non-discoverable under any circumstances.

Amazon also makes a conclusory claim that "exceptional circumstances" require the production of Mr. Dragun's work product in this case.. But Amazon does not identify any exceptional circumstances, let alone prove they exist. Under Rule 26(b)(4)(D), a party carries a heavy burden in demonstrating the existence of exceptional circumstances. *Oki Am., Inc. v. Advanced Micro Devices, Inc.*, C 04-3171 CRB JL, 2006 WL 2987022 at *2 (N.D. Cal. Sept. 27, 2006); *see also Westrick,* 2012 WL 6599866 at *7 (no exceptional circumstances where no evidence that that testifying expert relied on results of consulting expert.). Exceptional circumstances exist where the condition observed by the expert is no longer observable, where the costs of an independent examination would be judicially prohibitive, or where there are no other available experts in the same field or subject area. *Oki,* 2006 WL 2987022 at *2. (internal citations omitted). Amazon has not met and cannot meet this burden. Amazon has received all materials Dr. Scott considered in forming her opinions and has a full and fair opportunity to probe Dr. Scott's knowledge about that material. "In such circumstances, court after court has refused to permit discovery from non-testifying experts." *Id.* at *3.

Amazon objects to the fact that Crossfield employs both Dr. Scott and Messrs. Dragun and Hoffman. But no case holds that a consulting expert's work must be disclosed if s/he works for the same firm as the testifying expert. To the contrary, a party may retain the *same individual* to both testify and consult without opening the consulting work to discovery. *See, e.g.*, *Sara Lee Corp. v. Kraft Foods Inc.*, 273 F.R.D. 416, 419-20 (N.D. Ill. 2011) ("a single expert may serve" as both "a non-testifying consultant and a testifying expert," and is not required to disclose materials generated in the consulting role). As Amazon notes, some cases indicate that ambiguity in such a dual (testifying and consulting) role should be resolved in favor of disclosure. But none of the experts in question play such a dual role: Dragun and Hoffman are not testifying and Scott did not consult. Moreover, Amazon has not shown any such ambiguity. In both cases Amazon cites—*S.E.C. v. Reyes* and *B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York, Inc*.—the same expert or experts had been hired in a dual testifying and consulting role. Consequently, any claim by the "dual expert" that he had not "considered" certain documents was hollow, particularly where the expert had personally generated those documents. But Scott did not generate any material Amazon seeks.

Mr. Dragun's and Mr. Hoffman's roles, moreover, are unlike those of the assistants and consulting experts in Amazon's cases. In *Herman v. Marine Midland Bank*, e.g., plaintiff's "consulting" expert's deposition was required because he was a listed co-author of the testifying expert's report, and plaintiff "ascribe[d] dispositive reliance" to the consultant's work on the report. 207 F.R.D at 31. Similarly, in *Long-Term Capital Holdings, LP v. United States*, the "consulting" experts allegedly prepared all quantitative analyses included in the expert reports, drafted portions of the reports, and provided many of the conclusions in the reports. Even on such facts, the court permitted only a limited deposition to determine the extent of the consulting experts' work in preparing and drafting the reports and prohibited questions on the consultants' underlying substantive analysis. 2003 WL 21269586 at *4. Testifying experts may, of course, use assistants, and such assistants ordinarily need not testify. *See, e.g.*, *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612-13 (7th Cir. 2002) (assistants normally need not testify; if an assistant is deposed, deposition limited to establishing competent performance of tasks). Amazon's claim that "any information Mr. Dragun has must be imputed to Dr. Scott" is both wrong and is spun from language that stands for the opposite proposition: an assistant's work is *protected* as work product just like the testifying expert's work. Advisory Comm. Notes to 2010 Amendment to Rule 26(b)(4). In any event, it is not Mr. Dragun's work in the role of an assistant that Amazon seeks.

Amazon urges that the SPO cannot affect the outcome of this motion. Because Amazon has not met the lower standard for discovery provided by the FRCP, it is correct that the Court need not

analyze the effect of the SPO. But Amazon cannot meet the heightened standard required by the SPO because the consulting expert work was not relied on (nor provided to) Dr. Scott; accordingly, the SPO is an independent reason to deny Amazon's motion.[5]

Amazon provides no basis for discovery of work performed by Apple's non-testifying, consulting experts that was never disclosed to Dr. Scott. Amazon's motion should be denied.

DATED: March 15, 2013.

DAVID R. EBERHART
DAVID J. SEPANIK
O'MELVENY & MYERS LLP

By: _____/s/ *David R. Eberhart*_____
DAVID R. EBERHART

Attorneys for Plaintiff and Counter-Defendant
APPLE INC.

DATED: March 15, 2013.

MARTIN R. GLICK
DANIEL B. ASIMOW
SEAN M. CALLAGY
ARNOLD & PORTER LLP

By: _____/s/ *Martin R. Glick*_____
MARTIN R. GLICK

Attorneys for Defendants and Counter-Claimants
AMAZON.COM, INC. and AMAZON DIGITAL SERVICES, INC.

**FILER ATTESTATION**

I, Martin R. Glick, am the ECF user whose identification and password are being used to file this **JOINT DISCOVERY LETTER BRIEF CONCERNING EXPERT DISCOVERY MATTER**. In compliance with Local Rule 5-1(i)(3), I hereby attest that David R. Eberhart concurs in this filing.

_____/s/ *Martin R. Glick*_____
MARTIN R. GLICK

---

[5] Amazon claims that paragraph 22(g) of the SPO precludes this result, but that argument would make the SPO language regarding experts void *ab initio*.