IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., | Case No.: 11-1327 PJH (JSC) |
| Plaintiff, | **ORDER RE: PLAINTIFF'S JOINT DISCOVERY LETTER (Dkt. No. 113)** |
| v. | |
| AMAZON.COM, INC., et al., | |
| Defendants. | |

Now pending before the Court is the parties' joint discovery letter brief concerning whether Apple should be compelled to produce discovery related to the work of two assistants to Apple's testifying survey expert. (Dkt. No. 113.) Specifically, Amazon seeks to compel Apple to 1) produce undisclosed survey work conducted by the assistants, Brian Dragun and Tim Hoffman, and 2) make Dragun and Hoffman available for deposition. The undisclosed survey work at issue is an initial survey generated by Dragun and Hoffman that Amazon believes may have "influenced and informed" the subsequent survey work of Apple's testifying expert, Dr. Carol Scott, who used Dragun and Hoffman as assistants in that later work. (*Id.* at 1.) Apple contends that the initial survey work is undiscoverable because it was created by Dragun and Hoffman in their roles as Apple's non-testifying, consulting experts, and because it "was never provided to, discussed with, or

considered by Scott." (*Id.* at 6.)  For the reasons stated below, the Court finds that limited depositions of both Dragun and Hoffman are warranted.

## DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires the production of "the facts or data considered by the [expert] witness in forming" his or her opinions.  Courts have read the term "considered" to include information that an expert reviews or generates, "regardless of whether the experts actually rely on those materials as a basis for their opinions." *See, e.g., S.E.C. v. Reyes*, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007).  At the same time, when experts serve as litigation consultants, the work-product privilege generally applies to materials reviewed or generated by them in that capacity.  *See* Fed. R .Civ. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238–39 (1975); *Reyes*, 2007 WL 963422 at *1.  In addition, Rule 26(b)(4)(D) provides that a party may not "discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" unless, in relevant part, exceptional circumstances can be shown.

The Court concludes that Apple should be compelled to produce additional discovery on Dragun's and Hoffman's involvement in the development and analysis of the later survey work, although it is premature to order any discovery on the undisclosed survey.  Although Apple asserts that Dragun's and Hoffman's initial survey work is protected by Rule 26(b)(4)(D), the undisputed facts suggest that that work may not have been independent of Scott's later survey work in mid-2012.  That is to say, Scott may have considered, if not relied on, the initial survey work in forming her opinion because Dragun and Hoffman completed the initial survey work sometime before or during their work on the later surveys with Scott.  Further, while Scott testified at her deposition that she is unaware of any initial survey work conducted by Dragun, Apple produced billing records along with Scott's expert report that include all hours worked by Scott, Dragun, and Hoffman from January to September 2012.  Those time sheets show that from January to September 2012, Dragun and Hoffman each worked more than twice as many hours on this matter as Scott.  Thus, Apple's contention that Scott and her assistants' mid-2012 survey work is independent of the initial survey is

called into question by the billing records for the mid-2012 survey work which includes hours spent on the initial survey.

Moreover, on this record it is difficult to definitively conclude that Scott was not exposed in some manner, perhaps even unknowingly, to the initial survey work given the proximity in time of the two work projects and the dependent nature of Scott, Dragun, and Hoffman's working relationship. Scott testified at her deposition that that Dragun and Hoffman "will do all the initial putting together [of the survey data]," and "after they've done the initial work, then that's when I get involved." (Dkt. No. 113, Ex. 1 at 69:7-15.) Regarding the designing of the surveys, Scott could not recall whether she designed the surveys herself or if this was done in collaboration with Dragun and Hoffman, or others at her firm. (*Id.* at 71:21-72:4) She did testify that Hoffman does a "cleaning" of the data before she sees it, and that she, Hoffman and Dragun sometimes jointly examine and discuss the results of the surveys, but did not say whether that happened in this case. (*Id.* at 86:25-88:3).

While Scott's deposition and the billing records reveal some collaboration between Scott, Hoffman and Dragun, the record does not support Amazon's full discovery request. To require Apple to produce the initial survey, or have Dragun and Hoffman deposed on the contents of the initial survey, might violate Rule 26(b)(4)(D). However, if Amazon deposes Dragun and Hoffman solely on the issue of their specific involvement in the later survey work, Rule 26(b)(4)(D) would not be implicated.

The cases Amazon relies upon for a broader ruling do not support its contention. In *Derrickson v. Circuit City Stores, Inc.*, 1999 WL 1456538, at *6-7 (D. Md. Mar. 19, 1999), the court rejected the contention that an assistant's work was non-discoverable work-product where the assistant and testifying expert worked "hand-in-glove" in analyzing and generating data. It was undisputed, however, that the work produced by the non-testifying expert was relied upon by the testifying expert in forming his opinion. *Id.* at *6; *see also Heitmann v. Concrete Pipe Mach.*, 98 F.R.D. 740, 742 (E.D. Mo. 1983) (holding that documents generated by non-testifying expert must be produced because the testifying expert "relied upon the [documents] in forming his own opinion"). Such reliance has not been established in this case.

Similarly, in *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002), the court ordered the deposition of a non-testifying expert on what that expert's activities were in assisting in the drafting of the expert report. The court found that the deposition was warranted because the non-testifying expert co-authored the expert report and the evidence—including the associate's billing records which reflected 16.75 hours more than the number of hours billed by the expert and more than half the total hours it took to generate the report—"clearly demonstrate[d]" that the expert report submitted was "the result of substantial collaborative work" between he and the testifying expert. *Id.* As in *Herman*, the Court has identified signs of considerable collaboration between Scott and Dragun and Hoffman so as to warrant the deposition of Dragun and Hoffman on their actions in assisting Scott,[1] but nothing in *Herman* supports compelling discovery of their initial survey work.

Finally, although Amazon cites *Long-Term Capital Holdings v. United States*, 2003 WL 21269586, at *4 (D. Conn. May 6, 2003) as supporting authority, the court there declined to allow discovery into the substance of the assistants' work in developing the expert report; rather, the court held that a deposition concerning only the "participation of [consulting] personnel in the preparation and drafting of the expert reports and the extent of any meetings and contacts between [consultants] and [the testifying expert] does not invoke the work product concerns underlying Rule 26(b)(4)(B)."[2]

---

[1] Apple argues that *Herman* is distinguishable because there the assistant was the co-author of the expert report. The Court is not persuaded that *Herman* turned on the assistant's status as a co-author. Indeed, the *Herman* court dedicates most of its discussion to the assistant's level of involvement—hours worked, fees paid—in analogizing the case to the facts in *Derrickson*, where the assistant was not a co-author.

[2] While Amazon raises the issue of Rule 26(b)(4)(D)'s "exceptional circumstances" exception several times, it does not explain what the exceptional circumstances are in this case. Although not entirely clear, it appears Amazon asserts that it needs the initial survey work to cross-examine Scott. (*See* Dkt. No. 113 at 4 ("[T]he materials are sought for impeachment purposes, which the protective order does not limit, and for which "exceptional circumstances" do exist, requiring production."). Exceptional circumstances exist where the condition observed by the expert is no longer observable, where the costs of an independent examination would be judicially prohibitive, or where there are no other available experts in the same field or subject area. *Oki Am., Inc. v. Advanced Micro Devices, Inc.*, 2006 WL 2987022 at *2 (N.D. Cal. Sept. 27, 2006). Amazon cites no case, and provides no reasoning, supporting its suggestion that cross-examination qualifies as an exceptional circumstance.

4

Amazon also relies on *Reyes* for the proposition that since Dragun and Hoffman were both consulting experts and assistants to the testifying expert, their work is protected "only over those materials generated or considered uniquely in the expert's role as consultant." (Dkt. No. 113 at 3 (quoting *Reyes*, 2007 WL 963422 at *1).) In other words, Amazon argues that to the extent there is any ambiguity as to whether materials were generated by Dragun and Hoffman solely in their capacity as consulting experts, the materials are discoverable. *Reyes*, however, addressed the particular issue of when a single expert "alternately dons and doffs the 'privileged hat' of a litigation consultant and the 'non-privileged hat' of the testifying witness," holding that the work-product privilege applies "only as to materials that do not pertain to the subject matter on which [the] experts have submitted testimony." 2007 WL 963422 at *1-2. Dragun and Hoffman, however, are the testifying expert's assistants; they are not themselves the testifying expert as in *Reyes*. Amazon cites no case that has extended *Reyes* to such a situation, nor does it offer an explanation as to why such an extension should be made. Indeed, *Reyes*' holding that materials are protected only to the extent they were generated or considered uniquely in the expert's role as consultant appears to be of little help here where an inquiry into what the *assistants* considered is not part of the analysis.

At the same time, the Court is not persuaded by Apple's argument that Scott's testimony regarding her ignorance of the initial survey is sufficient to find that the initial survey had no bearing on Scott's opinion. Her opinion is influenced by, among other things, the development of the surveys, the collection of the data from those surveys, and the analysis of that data—all tasks that Dragun and Hoffman either did assist or may have assisted Scott with. Scott could not recall the extent of Dragun's and Hoffman's involvement in the later surveys. Apple's reliance on *U.S. ex rel. Westrick*, 2012 WL 6599866 (D.D.C. Dec. 18, 2012) is inapposite. The *Westrick* court refused to compel production of a consulting expert's work where there was "nothing more than speculation" that the consulting expert worked with the testifying expert in any capacity in developing the expert report. 2012 WL 6599866 at *4. Here, the Court is not compelling production of the consulting experts' work and, in any event, it is undisputed that the consulting experts collaborated with the testifying expert on her work leading to her expert report.

At the hearing, Apple argued that *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002)—a case about whether an expert's opinion should be excluded if that expert relies on opinions outside his own expertise—limits discovery into an assistant's work.  In *Dura Auto.*, the court stated that while persons providing assistance in formulating expert opinion normally need not testify, "[t]he opposing party can depose them in order to make sure they performed their tasks competently."  285 F.3d at 612-13.  The court, however, was not asked whether it is appropriate to depose an assistant under these circumstances.  The question facing the *Dura Auto* court—whether the district court properly excluded expert testimony under the *Daubert* standards—is significantly different from the question posed to this Court: whether a testifying expert's assistants, who also perform their own consulting expert work on the same subject matter as their assistance, may be deposed to test the nature and confines of the assistance they provided to the testifying expert.  The *Dura Auto* holding accordingly does not apply.

Finally, the parties' joint letter briefly discusses the stipulated protective order ("SPO") entered in this case and its effect on the parties' present dispute.  The SPO provides in relevant part that "[d]iscovery of materials provided to testifying experts shall be limited to those materials . . . actually relied upon by the testifying expert."  (Dkt. No. 113 at 4; Dkt. No. 61 § 20(b).)  The SPO thus sets a higher standard than the Federal Rules for discovery of certain materials, requiring the expert to actually rely on the materials.  *See Reyes*, 2007 WL 963422, at *1 (noting that Rule 26(a)(2)(B)(ii) requires the production of "the facts or data considered by the [expert] witness in forming" his or her opinions and that the term "considered" has been interpreted to include information that an expert reviews or generates, "regardless of whether the experts actually rely on those materials as a basis for their opinions.").  However, the SPO appears inapplicable to the parties' dispute.  As Amazon points out, the SPO governs discovery of materials *provided to* a testifying expert, not materials *generated by* a testifying expert's assistants.  Amazon further argues that it seeks the discovery for impeachment purposes, which the SPO does not limit.  Apple does not respond to these arguments, and instead concludes that "Amazon cannot meet the heightened standard required by the SPO because the consulting expert work was not relied on (nor provided to)

6

Dr. Scott." (Dkt. No. 113 at 8.) Based on the record in front of it, the Court concludes that the SPO is not applicable to the current dispute.

## CONCLUSION

For the reasons stated, the Court finds that Apple must produce Dragun and Hoffman for limited deposition. Specifically, Dragun and Hoffman must be prepared to testify as to their activities and level of involvement with Dr. Scott's report, including their activities related to the four surveys designed, conducted, and analyzed by Scott in mid-2012. The inquiry into the assistants' activities may include questions regarding what materials were used in designing, conducting, and analyzing the mid-2012 surveys. Amazon may also inquire as to whether Dragun and Hoffman actually performed any consulting work for Apple apart from their assistance to Dr. Scott; however, such questions cannot probe the substance of the assistants' initial survey work. If, following the deposition, Amazon believes the testimony reveals that Dragun's and Hoffman's consulting work is discoverable, it may return to court to seek additional discovery, provided no agreement can be reached.

**IT IS SO ORDERED.**

Dated: April 1, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE